RICHARD E. BLOCK and DON K. HENDERSON, Plaintiffs-Appellees, *v.* AUSTIN WILLIAM LEA, ELINOR GROMM LEA, MARILYN MALM LINSCOTT, Defendants-Appellees, and DOROTHY JEAN PRING, Defendant-Appellant

NO. 9395

(CIVIL NO. 2047)

AUGUST 20, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

On February 3, 1983, this court by memorandum opinion remanded this case for new findings of fact and conclusions of law relating to questions generated by the issue of the existence of a partnership. On May 5, 1983, the trial court adopted its previous findings and conclusions, entered new ones, and stated that any conflict between the old and the new findings and conclusions would be resolved in favor of the new. On May 17, 1983, the trial court entered judgment for specific performance of a letter agreement for the sale of cottage 18 (cottage 18) of the Pali Kai Cottages on Kauai from defendants Austin William Lea (Lea), Lea's wife Elinor (Elinor), Marilyn Malm Linscott (Linscott), and Dorothy Jean Pring (Pring) to plaintiffs Richard W. Block (Block) and Don K. Henderson (Henderson) (collectively plaintiffs).[1] Plaintiffs were also awarded their costs.[2] Only Pring appeals.

Pring first argues that the trial court's new finding of fact no. 9 is clearly erroneous and the new conclusions of law nos. 1, 2, 3, 5 and 6 are in error.[3] Pring further urges that the trial court erred in

---

[1] The trial court also denied all other claims and cross-claims.

[2] The matter of the award of costs or apportionment has not been raised on appeal.

[3] Pring's brief would have been infinitely more helpful to this court if she had cited by number the finding and conclusion she was attacking. Although she did quote the finding and conclusions complained of, the court was required to search the findings and conclusions in order to determine exactly which ones she was quoting. Pring's brief is in violation of Rule 3(b)(5), Rules of the Supreme Court (RSC), and we could refuse to consider her points on appeal, *Johnson v. Robert's Hawaii Tour, Inc.*, 4 Haw. App. 179, 664 P.2d 262 (1983). However, we have been able to decipher her brief and we will consider her arguments.

admitting into evidence the letter agreement for the sale of cottage 18, which this action sought to enforce, and testimony relating to her financial condition at the time of the transaction. Finally, Pring contends that the court erred in not granting her prayer for an accounting. We find no reversible error and affirm.

On June 19, 1964, Edward S. Vanderhoof (Vanderhoof), George W. Magladry (Magladry) and Lea entered into a written agreement (1964 agreement) forming a partnership called Hawaii Investment Properties (HIP) to "acquire, own, manage and operate" cottage 18 "and to invest such partnership capital and profits as may exist in other income producing properties and activities."[4] The partnership was to terminate at the end of ten years. The partnership subsequently purchased cottage 18 by way of an agreement of sale.

At the time of the 1964 agreement and the purchase of cottage 18, Magladry was married to Linscott and Vanderhoof was married to Pring. In 1967, Magladry was divorced from Linscott and on August 19, 1977, Vanderhoof was divorced from Pring. In those separate California divorce proceedings, Linscott and Pring were awarded the "interest[s] in the partnership" held by their spouses.

On April 18, 1975, while Pring's divorce was pending, Block wrote to her expressing his interest in purchasing Pali Kai cottage 20, owned by Pring and Vanderhoof. Pring told him that because of the pending divorce, the cottage could not be sold but that Lea, representing HIP, might be interested in selling cottage 18. Upon contacting Lea, Block was advised that HIP, also, could not negotiate any sale because Vanderhoof's partnership interest in cottage 18 was tied up in the divorce proceeding.

In March and August of 1977, Block again contacted Pring, this time seeking to purchase cottage 18. Pring again referred Block to Lea advising him that Lea was handling all of the business arrangements. Pring further stated that Lea's blessing was all that

---

[4] Although cottage 18 is on Kauai, apparently all the partners were residents of California and the transactions among the various partners took place there. However, neither the court below nor the parties addressed the question of whether California or Hawaii law applied to the partnership issue. Nor have the parties discussed it in the briefs. Therefore, Hawaii law is properly applied. *See* 16 Am. Jur. 2d *Conflict of Laws* § 5 (1979).

Block needed for the purchase because whatever Lea decided was okay with her. Block contacted Lea and was again informed that the cottage could not be sold because of Vanderhoof's pending divorce.

On January 5 and February 7, 1978, after Pring's divorce, Block spoke with Pring by telephone regarding the purchase of cottage 18. Pring orally agreed to sell the cottage for $87,500 and asked Block to resolve and finalize the terms and details with Lea. On March 16, 1978, Block contacted Lea, informed him of the proposed price, and discussed terms for payment and interest. Lea informed Block that those matters still had to be approved by Pring and Linscott. Lea subsequently contacted both Linscott and Pring by telephone. Linscott agreed to the terms and authorized Lea to accept the offer. Pring, however, rejected the offer because she had information that Block had offered Vanderhoof $90,000 for cottage 20, which had been awarded to Vanderhoof in the divorce. Pring requested that the price be increased to $90,000. Lea contacted Block and the latter agreed to the higher price and other terms. Lea contacted both Pring and Linscott, informed them of the increased price and other terms, and received from each of them oral authorization to sell the cottage to Block.

Block incorporated the agreed terms into a letter dated March 16, 1978 and sent it to Lea. Lea executed the letter on behalf of himself, Elinor, Linscott, and Pring, and returned it on April 18, 1978. In June of 1978, upon satisfaction of the original agreement of sale, title to cottage 18 was conveyed in one-third undivided interests as tenants in common to Lea and Elinor as husband and wife, Linscott, and Pring.

The documents for the sale to Block were prepared, naming Henderson as the buyer, and transmitted to Lea on September 29, 1978. Lea, Elinor, and Linscott executed the documents but Pring did not.

On November 6, 1978, Block called Pring about executing the documents. Pring replied that she had changed her mind and would not sell cottage 18 to him. Block then called Lea and informed him of Pring's decision. Later on in November, Pring reaffirmed to Lea, Elinor, and Linscott her decision not to sell to Block and informed them that she wished to purchase their interests in cottage 18. On November 22, 1978, Block and Henderson brought

this action for specific performance of the March 16, 1978 letter agreement or for damages in the alternative.

After a bench trial, the court found, *inter alia,* that Lea, Linscott and Pring operated as a partnership (Pring partnership) from the time Pring was vested with Vanderhoof's "partnership interest," and the purpose of the Pring partnership included the sale of cottage 18. The court further held that Lea was authorized by Linscott and Pring to sign the letter agreement of March 16, 1978 and the Statute of Frauds[5] did not defeat specific performance of the letter agreement.

The finding and the conclusions challenged by Pring read as follows:

## FINDING OF FACT

9. The purpose of the partnership involving Lea, Linscott and Pring was to buy, own, manage, receive income from and operate their jointly-owned investment property, with the ultimate goal of selling the partnership assets, distributing the proceeds therefrom and dissolving the partnership.

## CONCLUSIONS OF LAW

1. The partnership formed by the Partnership Agreement dated June 19, 1964, was dissolved pursuant to H.R.S. § 425-129 upon the transfer of George W. Magladry's partnership interest to Linscott.

---

[5] Hawaii Revised Statutes (HRS) § 656-1 (1976, as amended) reads in pertinent part as follows:

*Certain contracts, when actionable.* No action shall be brought and maintained in any of the following cases:

* * *

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;

* * *

Unless the promise, contract or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by him in writing lawfully authorized.

2. After the Magladry/Linscott divorce, the three partners (Vanderhoof, Lea and Linscott) continued to operate as a partnership pursuant to H.R.S. § 425-106 but were not subject to the terms of the June 19, 1964, Partnership Agreement.

3. Upon Vanderhoof's divorce from Pring and the transfer of Vanderhoof's partnership interest to Pring, the partnership then existing was again dissolved pursuant to H.R.S. § 425-129, and a new partnership consisting of Lea, Linscott and Pring was created pursuant to H.R.S. § 425-106.

5. Lea had the authority to bind the partnership to sell Cottage 18 to Block pursuant to the verbal authorizations given by Linscott and Pring.

6. The Statute of Frauds does not defeat specific performance of the March 16, 1978, letter agreement, because said agreement was authorized and was within the normal scope of the partnership business.

Pring argues that the HIP partnership was not dissolved, that she and Linscott were successor partners, and the 1964 agreement continued to govern the business. She contends that the Statute of Frauds made the letter agreement unenforceable, since Lea had no written authorization to execute it. She further argues that under the 1964 agreement she had the right of "first refusal" to purchase cottage 18.

I.

Findings of fact entered by a trial court will not be set aside on appeal unless clearly erroneous in view of the reliable, probative and substantial evidence in the record, Rule 52(a), Hawaii Rules of Civil Procedure, or the appellate court is left with a definite and firm conviction that a mistake has been made. *Waugh v. University of Hawaii,* 63 Haw. 117, 621 P.2d 957 (1980); *Kim v. State,* 62 Haw. 483, 616 P.2d 1376 (1980); *Stewart v. Smith,* 4 Haw. App. 185, 662 P.2d 1121 (1983). Substantial evidence is credible evidence of sufficient quantity and probative value to justify a reasonable person in reaching a conclusion. *Shoemaker v. Takai,* 57 Haw. 599, 561 P.2d 1286 (1977). *Stewart v. Smith,* 4 Haw. App. at 188, 662 P.2d at 1124.

On the other hand, an appellate court may freely review the trial court's conclusions of law. *Molokoa Village Development Co. v.*

*Kauai Electric Co.,* 60 Haw. 582, 593 P.2d 375 (1979); *Friedrich v. Department of Transportation,* 60 Haw. 32, 586 P.2d 1037 (1978).

### A. FINDING OF FACT NO. 9

Pring does not dispute the existence of the partnership among herself, Lea and Linscott. However, she contends that it was not the partnership's purpose to sell cottage 18. The law and the facts militate against her argument.

The evidence clearly indicates that from and after the time that the "partnership interests" were vested in Linscott and Pring, they and Lea considered and intended that one of their purposes was to sell cottage 18. While Pring may have had a change of heart between her verbal authorization to Lea to sign the letter agreement and her receipt of the documents of sale for execution, it is clear that, prior to and after her acquisition of the "partnership interest," she considered that cottage 18 was subject to sale and that Lea as managing partner had authority to sell it. Furthermore, the testimony of Lea and Linscott supports the trial court's finding. Although Pring testified otherwise, the court resolved the issue of credibility against her and we are bound thereby. *Buffandeau v. Shin,* 60 Haw. 280, 587 P.2d 1236 (1978); *Shinn v. Edwin Yee, Ltd.,* 57 Haw. 215, 553 P.2d 733 (1976); *Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 681 P.2d 580 (1984).

Finding of fact no. 9 is not clearly erroneous and Pring has not convinced us that a mistake has been made.

### B. CONCLUSIONS OF LAW NOS. 1, 2 AND 3

In support of conclusions of law nos. 1, 2 and 3, the trial court cited Hawaii Revised Statutes (HRS) §§ 425-106 and 129 (1976), which read in pertinent part as follows:

§ 425-106 *Partnership defined.* (1) A partnership is an association (including a joint venture) of two or more persons to carry on as co-owners a business for profit.

§ 425-129 *Dissolution defined.* The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

We hold that the trial court's conclusions are correct applications of partnership law to the facts of this case. We note, however, as to conclusion no. 1 that, while the court was correct in holding that the HIP partnership was dissolved under the terms of HRS § 425-129, it was not correct when it stated that it was the transfer of Magladry's interest to Linscott that effected the dissolution. Rather, it was Magladry's disassociation from the partnership business that caused the dissolution. Likewise, as to conclusion no. 3, it was Vanderhoof's disassociation from the Vanderhoof, Lea, Linscott partnership that effected its dissolution. The court's conclusions, though based on the wrong reasons, are correct and will not be disturbed on appeal. *McCarthy v. Yempuku,* 5 Haw. App. 45, 678 P.2d 11 (1984).

Pring argues that by virtue of the California divorce decrees, first Linscott and then Pring merely stepped into her respective spouse's shoes, and the 1964 partnership agreement continued with new members. We construe Pring to be arguing that she and Linscott became assignees of their former spouses' interests. As pointed out below, Pring's argument is without merit.

First, paragraph H, 3, 1, of the 1964 agreement prohibits a partner from selling, mortgaging, hypothecating, or assigning his partnership interest to anyone other than a partner. Moreover, the 1964 agreement does not provide for succession to a partner's interest, except that a wife may assume the interest of her deceased or disabled husband, which is not the case here. (Paragraph E, 4.) In all instances involving a termination of a partner other than by death or disability, the agreement provides that the remaining partners may continue the business and acquire the terminating partner's share, or "dissolve" the partnership. The 1964 agreement, in keeping with general partnership law, contemplates that the membership could not be changed except in the narrow circumstances of allowing a wife to assume the interest of her disabled or deceased husband. Under the circumstances of this case, neither Linscott nor Pring could assume her husband's interest.

Additionally, under HRS § 425-127[6] even if Linscott and Pring

---

[6] HRS § 425-127 (1976) provides:

*Assignment of partner's interest.* (1) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the

could have each been an assignee of a partnership interest, they would merely acquire the rights to the profits to which their former spouses were entitled. They could not become successor partners.

Therefore, while the California court could transfer the "interest[s] in the partnership" to Linscott and Pring for purposes of the divorce decrees, it could not make them partners in fact in the original partnership.

After Linscott obtained Magladry's partnership interest, Magladry disassociated himself from the partnership and its business. As noted above, this caused a dissolution of the HIP partnership under HRS § 425-129. *See* H. Sakai, *Dissolution and Winding Up Under the UPA,* 9 Haw. B. J. 90 (Winter 1973). The remaining partners, Vanderhoof and Lea, were required under the 1964 agreement to either wind up the partnership or continue without Magladry, paying him for his interest. In the latter event, of course, they would have had to pay Linscott.

In order to allow Linscott into the partnership under the terms of the 1964 agreement, it would have been necessary to amend it, or enter into a completely new agreement with Linscott incorporating the terms of the 1964 agreement. None of those steps were taken and, although Vanderhoof, Lea and Linscott operated as a partnership, they could not, by its very terms, operate under the 1964 agreement. Thus, when the Pring partnership began operating by virtue of the transfer of Vanderhoof's interest to Pring and his disassociation from the business, it, too, was not operating under the 1964 agreement, but rather under the provisions of HRS Chapter 425, Part IV, Uniform Partnership Act (UPA).[7]

---

other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

(2) In case of a dissolution of the partnership, the assignee is entitled to receive his assignor's interest and may require an account from the date only of the last account agreed to by all the partners.

[7] We note that HRS § 425-123 is not applicable here because, as noted above, the new partnership created upon Linscott's divorce abrogated the 1964 agreement, and its ten-year term is of no import. The fact that Vanderhoof, Lea and Linscott

## C. CONCLUSIONS OF LAW 5 AND 6

The court's conclusions nos. 5 and 6 are also correct, since they, too, flow logically from the evidence and the findings of fact.

The only evidence contrary to the conclusion that both Linscott and Pring had verbally authorized Lea to accept Block's offer made in the March 16, 1978 letter agreement came from Pring. The trial court resolved the issue of credibility against Pring and concluded that, as a matter of law, Lea was authorized to sign the letter agreement on behalf of the Pring partnership and that the Statute of Frauds would not prohibit enforcement of the agreement. We agree with the trial court.

Under partnership law, where title to partnership real property is held in the name of one or more or all of the partners, one partner may bind the partnership by contracting to sell the property in the partnership's name or his own name if the act is within the real or apparent authority of the partner. UPA § 10(4) (1914); HRS § 425-110(4) (1976);[8] *Kay v. Gitomer,* 253 Md. 32, 251 A.2d 853 (1969). *See Smith v. Dixon,* 238 Ark. 1018, 386 S.W.2d 244 (1965). Where a partner is found to have acted within the scope of

---

operated as a partnership after 1974 could not, therefore, extend the life of the original agreement. Section 425-123 (1976) provides:

> *Continuation of partnership beyond fixed term.* (1) When a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination, so far as is consistent with a partnership at will. ·
>
> (2) A continuation of the business by the partners or such of them as habitually acted therein during the term, without any settlement or liquidation of the partnership affairs, is prima facie evidence of a continuation of the partnership.

[8] Section 425-110(4) reads as follows:

> (4) Where the title to real property is in the name of one or more or all the partners, or a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of paragraph (1) of section 425-109.

The purpose of the provision is to allow any one of the partners holding title to partnership real property in common with the other partners to execute a valid deed to the property, as an agent of the other partners, if the act is performed within his real or apparent authority. *See In re Hurt,* 129 F. Supp. 94 (S.D. Cal. 1955); 60 Am. Jur. 2d *Partnership* § 148 (1972). The statute speaks of the conveyance as passing "the equitable interest of the partnership." This is to indicate that where the conveyance is in an individual partner's name the grantee obtains the interest of the

his authority, his agreement to sell partnership real property is binding upon the other partners notwithstanding their claim that he did not have written authorization to do so, and the Statute of Frauds will not defeat performance of the agreement. *Ellis v. Mihelis,* 60 Cal.2d 206, 32 Cal. Rptr. 415, 421-22, 384 P.2d 7, 13-14 (1963). *See Kay v. Gitomer, supra. See also* UPA §§ 9(1), 10(4) (1914); HRS §§ 425-109(1) and 110(4) (1976); 60 Am. Jur. 2d *Partnership* § 148 (1972); J. Crane, *Law of Partnership* § 50A (1968).

Pring, however, argues that cottage 18 was essential to the continued business of the partnership and, therefore, its sale was not within the normal scope of the partnership business and Lea had no power to agree to sell cottage 18 without the written authorization of Linscott and herself. We have already held that the trial court was correct in finding that the sale of cottage 18 was within the partnership's business purposes and Pring's argument is without merit.

## II.

In view of our holding that the 1964 agreement did not govern the Pring partnership, Pring's argument that she had a right of "first refusal" to buy the property is of no avail.

## III.

Pring argues that the trial court erred in not ruling on her prayer for an accounting from Lea. In fact, the court denied her prayer when it ruled that all "remaining claims and cross-claims" were denied.

---

partnership entity in the property. *Id.* The grantee must obtain the legal interests of the other partners by separate conveyance or by suit in equity, as was done here, in which case the question of the conveying partner's authority will be adjudicated. *Id.*

HRS § 425-109(1), cited in § 425-110(4), provides:

*Partner agent of partnership as to partnership business.* (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

The action of accounting is designed to provide a remedy to compel a person who, by virtue of some confidential or trust relationship, has received or been entrusted with money or property belonging to another or which is to be applied or disposed of in a particular manner, to render an account thereof. 1 Am. Jur. 2d *Accounts and Accounting* § 45 (1962).

Under HRS §§ 425-119 and 120,[9] Lea had the duty, since he had possession of the partnership's books and management of its affairs, to render on demand any information to the other partners on those affairs. However, Pring's right to an accounting from Lea is governed by HRS § 425-122 (1976), which reads as follows:

*Right to an account.* Any partner shall have the right to a formal account as to partnership affairs:

(a) If he is wrongfully excluded from the partnership business or possession of its property by his co-partners,

(b) If the right exists under the terms of any agreement,

(c) As provided by section 425-121,

(d) Whenever other circumstances render it just and reasonable.

Pring neither alleged nor proved that she was wrongfully excluded from the partnership business. Moreover, she had no right to an accounting by any agreement (not even the 1964 agreement). While Lea was certainly a fiduciary as to Pring and Linscott, nevertheless he was not accountable under HRS § 425-121,[10] because there is no evidence that he had received any profits

---

[9] HRS § 425-119 (1976) provides:

*Partnership books.* The partnership books shall be kept, subject to any agreement between the partners, at the principal place of business of the partnership, and every partner shall at all times have access to and may inspect and copy any of them.

HRS § 425-120 (1976) provides:

*Duty of partners to render information.* Partners shall render on demand true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner or partner under legal disability.

[10] HRS § 425-121 (1976) provides in pertinent part:

*Partner accountable as a fiduciary.* (1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

without their consent. *See* 60 Am. Jur. 2d *Partnership* § 265, n. 15 (1971). Therefore, Pring was not entitled to an accounting under HRS § 425-122(a), (b), or (c) and she was only entitled to an accounting, if at all, under subsection (d) for other circumstances rendering it just and reasonable.

Pring had the burden of producing evidence of circumstances indicating that an accounting was just and reasonable. *Fernandez v. Garza,* 88 Ariz. 214, 354 P.2d 260 (1960). She failed to meet her burden. Her cross-claim merely stated that she had not received an accounting, but did not allege a demand therefor. *See* 1 Am. Jur. 2d *Accounts and Accounting* § 46 (1962). Although she testified that she had demanded an accounting, Lea contradicted her. The court apparently found Lea more credible. Moreover, the evidence indicates that Pring received from Lea a copy of the partnership's annual income tax return for the years 1977 and 1978, showing income and expenses and the capital account, and also received a distribution of profits from the rental of cottage 18, all without criticism or complaint. She never testified to any circumstances indicating that an accounting would be just and reasonable.

The action of account between partners is equitable in nature, 60 Am. Jur. 2d *Partnership* § 266 (1972), and is addressed to the sound discretion of the court. *Phillips v. Kula 200 II,* 4 Haw. App. 350, 356, 667 P.2d 261, 265 (1983). In view of all the circumstances of this case, we are not convinced that the trial court erred in denying Pring's prayer for an accounting. *See* 1 Am. Jur. 2d *Accounts and Accounting* §§ 50, 51 (1962).

## IV.

Pring's argument that the court erred in admitting into evidence the March 16, 1978 letter and testimony of her financial condition is without merit. First, the portion of the transcript which Pring says contains her objection indicates the objection was withdrawn. We will not search the record to find where her objection in fact was made, if it was. *See* Rule 3(b)(5), RSC. Second, the evidence of her financial condition was clearly relevant to her state of mind when she authorized Lea to accept Block's offer and when she refused to sign the sale documents.

Affirmed.

*Teresa S. Tico* on the briefs for defendant-appellant.

*Norito Kawakami (Case, Kay & Lynch* of counsel) and *Donald H. Wilson* on the brief for plaintiffs-appellees.

Joinder on the answering brief: *George M. Masuoka (Masuoka & Hong* of counsel) for defendants-appellees.