HAROLD LUNDBURG, Plaintiff-Appellee, *v.* JAMES W. STINSON, dba STINSON REALTY, ROBERT P. BRUCE, Trustee of Bruce Trust, BRUCE TRUST, JOHN M. LANGA, by his Attorney-in-Fact, SANFORD J. LANGA, SANFORD J. LANGA, and LYNNE L. STOREY, Defendants-Appellants

NO. 8931

(CIVIL NO. 3745)

JANUARY 30, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In this action based upon a real estate listing agreement, defendants James Stinson (Stinson), Lois Bruce (Bruce), who is personal representative of the estate of Robert Bruce,[1] and Sanford Langa (Langa) appeal from the June 28, 1982 judgment in favor of plaintiff Harold Lundburg (Lundburg). We reverse.

Although the appeal raises several questions,[2] the dispositive ones and our answers are: (1) Was this action barred as to Stinson by the doctrine of *res judicata* because an earlier action by Lundburg against Stinson and Maalaea Land Corporation (MLC), a Hawaii corporation, involving the same subject matter was dismissed by the circuit court, without objection, pursuant to Rule 12(f), Rules of the Circuit Courts (RCC)? We answer yes as to Stinson. We do not reach the question whether this action is barred as to Bruce and Langa by the doctrine of collateral estoppel.

(2) Was Lundburg the procuring cause of the real estate transaction under the listing agreement, so as to entitle him to recover either a commission or damages? No.

---

[1] The complaint named Robert P. Bruce, Trustee of Bruce Trust, as a defendant. He died on or about August 11, 1981, and Lois Bruce was substituted for him as a defendant on January 26, 1982.

[2] Defendants urge as other points on appeal the court's action in proceeding to trial without a jury; admitting and barring evidence; awarding punitive damages; and that numerous findings of fact and conclusions of law are in error.

396

*FACTS*

Langa, Robert Bruce, Joseph Andrews and Kenneth Briten formed MLC in 1973 to develop adjoining properties in Maalaea, Maui, owned by the Franklyn Langa Trust[3] (Langa Trust) and Robert P. and Phyllis C. Bruce, which had been consolidated for development. To that end the owners leased the properties to MLC and gave MLC powers of attorney to develop them. Subsequently, MLC determined that the development costs were prohibitive and sought, instead, to sell its development rights in the property. It engaged a number of real estate brokers to assist it in doing so.

In a May 19, 1975 letter to Lundburg, MLC listed the development project with him to find a lessee-developer. The letter, signed by Langa as secretary, reads as follows:

> Pursuant to your conversation of May 12, 1975, with Mr. Briten, the Board of Directors has authorized me to list the Beach House project with you under the following terms and conditions.
>
> 1. Your commission will be calculated upon the gross rent specified in any lease that may be executed with any person introduced to us by you according to the following formula: five percent of the first $10,000; four percent of the next $10,000; three percent of the next $40,000; two percent of the next $90,000; one percent of the balance; provided, however, that the total commission shall not in any event exceed $50,000, and provided further that there is sufficient cash available in the form of a lease premium over and above the rent payable by your client.
> 2. Your client upon entering into the lease with the land owners will pay to Maalaea Land Corporation $40,000 for its interest in the project, in return for which your client will be entitled to all surveys, engineering work, customer lists, legal and financial work products, etc.
>
> Mr. Haines has already provided you with information regarding the land owners' asking price for the lease; however the land owners are flexible in their demands, both as to the price and

---

[3] Langa and Franklyn E. Langa were the trustees of the trust.

the term of the lease. The land owners are asking for an initial $50,000 per year for the first ten years with 25 percent increase for the second ten year period and another 25 percent increase for the third ten year period. If your client prefers, the lease could specify an initial rent that would be subject to adjustment periodically in accordance with the Consumer Price Index, in lieu of arbitrary steps in the first thirty years. This approach might be more attractive in marketing the apartments.

While this listing is nominally for 60 days, you would be entitled to your commission without limitation of time if the property is ultimately leased to any person procured for us by you. Thus any person whose initial offer is obtained by your efforts will be considered your client and you will be entitled to your commission upon the consummation of a lease with him regardless of the circumstances under which the final agreement with him is reached.

Through one Gil Budar, Lundburg heard that Develco Corporation (Develco) might be interested in acquiring the development rights. Lundburg obtained a copy of an appraisal of the project and met with Robert Epley (Epley), then president of Develco, on May 29, 1974. Lundburg left the appraisal with Epley, and the following day Epley went to Maui, declining Lundburg's offer to accompany him. There, Epley was met by Stinson, whom Epley had employed before as a broker in other transactions, Robert Bruce and Langa. Stinson escorted Epley around Maui and, after a second trip by Epley, eventually submitted two offers to MLC on Epley's behalf, the second of which was accepted.

Upon completion of the transaction, Develco paid a $40,000 commission to Stinson. Lundburg learned of the deal and asserted that he was entitled to a portion of Stinson's commission because of his listing agreement. After originally agreeing to share the commission and assuring Epley that he would "take care" of Lundburg, Stinson reneged contending he had done all the work.

On November 1, 1976, Lundburg filed civil no. 3181 (civil no. 3181) in the Second Circuit Court against MLC for breach of contract and Stinson for contractual interference and breach of promise. Stinson was properly served and answered; however, MLC, which had been dissolved, was not served, and did not appear.

Subsequently, on May 26, 1978, Lundburg filed this action in the Second Circuit through a second attorney, against Stinson, Robert Bruce as Trustee of the Bruce Trust, the Bruce Trust, Langa, John Langa and Lynne Storey.[4] The complaint alleges MLC executed the listing as the agent for the owners of the property in question; that Lundburg procured Develco "as a prospective and actual lessee"; that Stinson was not the procuring cause; that Stinson was unjustly enriched; and that Lundburg was entitled to the commission "on the basis of quantum meruit or otherwise."

On June 14, 1978, after due and proper notice to Lundburg, civil no. 3181 was dismissed, without objection, pursuant to Rule 12(f), RCC, for Lundburg's failure to file a statement of readiness, and Lundburg pursued civil no. 3745.

On April 22, 1980, Defendants filed a motion for summary judgment in this case arguing, *inter alia,* that the doctrine of *res judicata* barred this action. The motion was denied and on June 28, 1982, after a bench trial, judgment was rendered for Lundburg. The trial court found a valid contract between the landowners and Lundburg, which defendants breached by not paying him a commission, and that Stinson had been unjustly enriched. The court held that the $40,000 paid to Stinson should have been paid to Lundburg. The court also held Langa and Stinson were liable to Lundburg for punitive damages. Judgment was rendered against all defendants, jointly and severally, in the amount of $61,381.42, including interest, costs and reasonable attorney's fees, and $5,000 each in punitive damages against Langa and Stinson. A timely appeal followed.

## RES JUDICATA

Defendants argue that because of the dismissal of civil no. 3181 with prejudice, this action is barred by the doctrines of *res judicata* and collateral estoppel. We agree that *res judicata* bars this action

---

[4] The record does not show when Bruce Trust was formed or what relationship it had with the property in question. All parties agree that the Bruce Trust in and of itself is not subject to suit and was intended to be replaced by Lois Bruce as personal representative of Robert Bruce. John Langa and Lynne Storey were later dismissed through stipulation and are not involved in this appeal.

against Stinson. Since we hold the court erred in holding Bruce and Langa liable to Lundburg, we need not reach the question of collateral estoppel.

Rule 12(f)[5] upon which Defendants rely provides:

> (f) Where no statement of readiness has been filed within one year after a complaint has been filed or within any extension granted by the court, the clerk shall notify in writing all parties affected thereby that the case will be dismissed for want of prosecution unless objections are filed within 10 days after receipt of such notice. If objections are not filed within said 10-day period or any extension granted by the court, the case shall stand dismissed with prejudice without the necessity of an order of dismissal being entered therein. Where objections are filed within said 10-day period or any extension granted by the court, the court shall hear said objections upon notice and determine whether the case should be dismissed.

In response to Defendants' argument regarding Rule 12(f), the trial court found, in finding of fact no. 29, that, "This action is not barred by the Court's action in Civil No. 3181, Second Circuit Court." We hold that the finding is really a conclusion of law, mislabeled a finding of fact, and is freely reviewable, *Block v. Lea,* 5 Haw. App. 266, 688 P.2d 724 (1984), employing the right/wrong standard. *Kipahulu Investment Co. v. Seltzer Partnership,* 4 Haw. App. 625, 631, 675 P.2d 778, 783 (1983).

In applying the doctrine of *res judicata,*

> three basic questions must ordinarily be answered in the affirmative: (1) Was the issue decided in the prior action identical with the issue presented in the present action? (2) Was there a final judgment on the merits in the prior action? (3) Was the party against whom the doctrine is asserted a party or in privity with a party to the previous adjudication? *Morneau v. Stark Enterprises Ltd.,* 56 Haw. 420, 424, 539 P.2d 472, 475 (1975).

*Silver v. Queen's Hospital,* 63 Haw. 430, 436, 629 P.2d 1116, 1121 (1981). Moreover, once applied, *res judicata* " 'precludes the relitigation, not only of the issues which were actually litigated in the

---

[5] Now 12(b)(6), RCC (1984).

first action, but also of all grounds of claim or defense which might have been properly litigated in the first action but were not litigated or decided.' *Estate of Bernice P. Bishop,* 36 Haw. 403, 416 (1943)." *Silver v. Queen's Hospital, supra,* at 435-36, 629 P.2d at 1121.

Although the complaint against Stinson in civil no. 3181 only raised contractual interference and breach of promise as grounds for relief, Lundburg is precluded from maintaining the present action against him for restitution or unjust enrichment since that claim could have been properly raised in civil no. 3181. Thus, questions (1) and (3) in *Silver* are answered in the affirmative.

Lundburg argues that element 2 is not met because the dismissal of civil no. 3181 was not a final adjudication on the merits. We disagree.

Rule 12(f) unequivocally provides that where there is a proposed dismissal and the plaintiff fails to object, the case stands dismissed with prejudice. After the court clerk notified Lundburg (through his attorney) that civil no. 3181 was to be dismissed pursuant to Rule 12(f), Lundburg had the choice of objecting or not.[6] Having failed to do so, Lundburg left the court with only one option — to dismiss the complaint. Under the clear language of the rule, the dismissal is with prejudice even though it was silent as to its effect. *Cf. GLA, Inc. v. Spengler,* 1 Haw. App. 647, 623 P.2d 1283 (1981) (dismissal held to be discretionary where objections are filed).

A dismissal with prejudice "is an adjudication on the merits of all the issues that were raised or could have been raised in the pleadings. Thus, subsequent litigation involving the same claims would be barred by *res judicata." Land v. Highway Construction Co.,* 64 Haw. 545, 551, 645 P.2d 295, 299 (1982) (citations omitted). Therefore, since civil no. 3181 was dismissed with prejudice, *res judicata* bars the present action against Stinson.

Lundburg asserts, however, that since there were two contemporaneous actions here, i.e., civil no. 3745 was filed prior to the

---

[6] Rule 12(f) provides that the ten-day period for objecting is not a hard-and-fast rule and is subject to extensions at the discretion of the court. *See, e.g., Wakuya v. Oahu Plumbing & Sheet Metal, Ltd.,* 65 Haw. 592, 597, 656 P.2d 84, 88 (1982).

dismissal of civil no. 3181, the policies barring relitigation are not pertinent and *res judicata* should not apply. The argument is without merit.

In *Silver v. Queen's Hospital, supra,* the supreme court faced a similar multi-suit problem where the plaintiff argued, *inter alia,* that *res judicata* barred only new actions. The court rejected the argument citing Restatement of Judgments § 43 which states:

> A valid and final judgment rendered in one action is conclusive in another action between the parties although the other action was commenced before the rendition of the judgment or before the commencement of the action in which the judgment was rendered.

*Id.* at 439, 629 P.2d at 1123-24.

Although *Silver* concerns Rule 41(b), Hawaii Rules of Civil Procedure,[7] its holding and the law generally regarding Rule 41(b) are applicable to an analysis of Rule 12(f). *Bagalay v. Lahaina Restoration Foundation,* 60 Haw. 125, 132, 588 P.2d 416, 421 (1978).

Although dismissal with prejudice is a strong sanction, Rule 12(f) mandates it. The rule gives a plaintiff an opportunity to avoid its harsh consequences. Its language is eminently clear, and a plaintiff who has been given proper notice cannot be heard to complain where his inaction is followed by the clearly mandated consequences.

## PROCURING CAUSE

Bruce and Langa contend conclusion of law no. 2[8] is in error

---

[7] Rule 41(b) states in pertinent part:

(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

[8] Conclusion of law no. 2 states:

2. A valid and enforceable contract existed between plaintiff and defendants Sanford J. Langa, John M. Langa, Lynne L. Story [sic], and Robert P. Bruce,

because Lundburg was not the procuring cause of the contract between Develco and MLC. We agree.

The lower court found a contract between Lundburg and the owners of the property, rather than between Lundburg and MLC. We need not pass on the question whether the court was correct in that regard, because we hold that Lundburg was not the "procuring cause" of the agreement between Develco and MLC.[9]

Since the contract is clear and unambiguous, its construction and legal effect is a question of law for the court, *Bishop Trust Co. v. Central Union Church of Honolulu,* 3 Haw. App. 624, 628, 656 P.2d 1353, 1356 (1983), and we are not bound by the trial court's construction. *American Security Bank v. Read Realty, Inc.,* 1 Haw. App. 161, 165, 616 P.2d 237, 241 (1980). The court construed the contract to require nothing more than that Lundburg introduce Epley, or Develco, to the project. We think the court erred.

Where there are many brokers involved in a transaction, there can be only one "procuring cause," *McCartney v. Malm,* 627 P.2d 1014, 1022 (Wyo. 1981); *Barstas Realty, Inc. v. Leverton,* 82 Nev. 6, 9, 409 P.2d 627, 629 (1966), and more than initial contact is required to be a procuring cause. *See Hal Taylor Associates v. Unionamerica, Inc.,* 657 P.2d 743 (Utah 1982).

The contract called for Lundburg to receive a commission if the property was ultimately "leased to any person procured for [MLC] by [Lundburg]." The meaning of the word procured is clearly set forth in the last sentence of the letter.

> Thus any person whose initial offer is obtained by your efforts will be considered your client and you will be entitled to your commission upon the consummation of a lease with him regardless of the circumstances under which the final agreement with him is reached.

Trustee of the Bruce Trust (succeeded by Lois M. Bruce), under which plaintiff would be entitled to the payment of a commission if a lease of the Maalaea property was executed by a person procured by plaintiff. Said defendants breached the contract by not paying plaintiff a commission plaintiff had earned.

[9] It should be noted, also, that, even if Lundburg were the procuring cause, he was only entitled to a commission in accordance with the formula established by the listing agreement.

Lundburg obtained no offer from Develco or Epley. Although he made the initial contact with and provided the appraisal report to Epley, he did nothing more. While it is true that Epley's attitude and mode of operation may have prevented Lundburg from accompanying Epley to Maui and assisting in the negotiations, that has nothing to do with Lundburg's performance under the contract. He was not the procuring cause of the offer and is not entitled to a commission under the contract. Certainly Bruce and Langa cannot be held responsible in contract for Epley's or Stinson's machinations.

Lundburg's argument that the contract did not require him to be the procuring cause is untenable under the clear language of the May 19, 1975 letter.

### CONCLUSION

Lundburg is barred by *res judicata* from bringing this action against Stinson. Lundburg was not the procuring cause of the transaction, and Bruce and Langa were not obligated to pay him any commission. Since Bruce and Langa were not liable for breach of contract, the award of punitive damages against them must fail. *See Sanders v. Point After, Inc.,* 2 Haw. App. 65, 73, 626 P.2d 193, 199 (1981).

Reversed.

*Steve Rink* for defendants-appellants.

*Edward F. Mason* for plaintiff-appellee.