**STATE OF HAWAII**, Plaintiff–Appellee, v. **EDGAR LUM,** Defendant–Appellant

NO. 13761

(CASE NO. C31 OF 2/16/89)

FEBRUARY 21, 1991

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant–Appellant Edgar Lum (Defendant) appeals his bench trial conviction in the District Court of the First Circuit, Koolaupoko Division, of violating the Land Use Ordinance (LUO) of the City and County of Honolulu. Chapter 21A, Revised Ordinances of Honolulu 1978 (Supp. 1987). We affirm.

The complaint reads:

On or about the 23rd day of January, 1988, at 47–626 Hui Uliuli Street, in the District of Koolaupoko, in the City and County of Honolulu, State of Hawaii, EDGAR LUM, did use a lot within a R–5 Residential District which is not in accordance with the permitted uses, structures and development standards under Table 8–A of the Land Use Ordinance of the City and County of Honolulu, to wit, maintain two (2) lodging units thereby violating Section 21A–5.40–2 of the Revised Ordinances of Honolulu, 1978, as amended.

The evidence at the bench trial showed that on January 23, 1988, Defendant owned a lot at 47–626 Hui Ulili Street (the property) on which he maintained a two–story building.[1] The front part of the building contained a living room, dining room, and a kitchen on the first floor, and three bedrooms and a bath on the second floor. The two floors were connected by an internal stairway.[2] The back part of the building's first floor contained two bedrooms, a bathroom, and a living room in which there was a sink and a refrigerator. The back part of the building's second floor contained a bedroom, a bathroom, and a living room, which also contained a sink and a refrigerator.[3] There are no internal passageways connecting the back units with each other or with the front unit.

After a bench trial, the court held that

[o]n January 23, 1988, Defendant maintained two lodging units on [the property] in violation of Section 21A–5.40–2, *R.O.H.*, 1978 amended.

---

[1] The name of the street is misspelled in the complaint.

[2] Hereafter the first and second floors of the front part of the building will be referred to as the front unit.

[3] Hereafter, the first and second floor's back portions will be referred to as the back units.

The dispositive question is whether the State proved the illegal use beyond a reasonable doubt.[4,5] After reviewing the record we hold it did.

## 1.

Lodging units are not a permitted use on the property. LUO § 21A–5.40–2, Table 8–A. The LUO defines a lodging unit as

> [a] room or rooms connected together, constituting an independent living unit for a family which does not contain any kitchen.

*Id.*, Article 9, L.[6] However, the LUO does not define "independent living unit for a family."[7] Consequently, we must determine the meaning of that term.

---

[4] Defendant attacks a number of the court's findings of fact. Findings of fact nos. 6, 8, and 12, which Defendant argues are only partially correct, are really conclusions of law. Consequently, they are freely reviewable on appeal. *Lundburg v. Stinson*, 5 Haw. App. 394, 695 P.2d 328 (1985). The same is true of findings of fact nos. 16 and 17, which Defendant argues are irrelevant. Defendant also asserts that finding of fact no. 11 is clearly erroneous, and finding no. 24 is based on hearsay. In our view, however, those findings are irrelevant to the issues in this case. Finally, Defendant contends that finding of fact no. 18 is not based on substantial evidence. However, finding no. 18 is really only a statement of a portion of the State's witness' testimony; it is not a finding of fact.

[5] We reject Defendant's argument that the State failed to prove venue in the Koolaupoko District, or that the property is zoned R–5 Residential. First, the lower court took judicial notice that Kahaluu is in the Koolaupoko District. Rule 201, Hawaii Rules of Evidence (1981). Second, the State's witness testified, without objection, that the property was zoned R–5 Residential.

[6] Article 9 of the LUO defines the terms employed in the LUO. Words or terms within a definition that are themselves defined in Article 9 are italicized. In the opinion the italics are omitted.

[7] A family is "one or more persons, all related by blood, adoption or marriage, occupying a dwelling unit or a lodging unit. A family may also be defined as no more than five unrelated persons." LUO Article 9, F.

Zoning ordinances are in derogation of the common law, and their provisions must be strictly construed. *Foster Village Community Ass'n v. Hess*, 4 Haw. App. 463, 667 P.2d 850 (1983). Nevertheless, the terms of a zoning ordinance should be accorded their natural and most obvious meaning "'when there is no manifest legislative intent contrarywise.'" *County of Maui v. Puamana Management Corp.*, 2 Haw. App. 352, 356, 631 P.2d 1215, 1218 (1981) (quoting *Moyer v. Board of Zoning Appeals*, 233 A.2d 311 (Me. 1967)). In interpreting a zoning ordinance, the duty of this court is to ascertain and give effect to the intent of the Honolulu city council (city council). *Foster Village Community Ass'n v. Hess, supra*. Legislative intent should be determined, if possible, from the language of the ordinance, and the language must be read in the context of the entire ordinance and construed in a manner consistent with the purposes of the ordinance. *Id.*

Turning first to the legislative scheme of the LUO we find its purpose is to regulate land use by, *inter alia,*

A. Minimizing adverse effects resulting from the inappropriate location, use or design of sites and structures.

\* \* \*

It is the intention of the City council [sic] that the provisions of the LUO provide reasonable development and design standards for the location, height, bulk and size of structures, yard areas, off–street parking facilities, and open spaces, and the use of structures and land for agriculture, industry, business, residences or other purposes.

LUO § 21A–1.20.

The LUO defines use as:

A. Any purpose for which a structure or a tract of land is designed, arranged, intended, maintained or occupied, or

B.  Any activity, occupation, business or operation car-
ried on, or intended to be carried on, in a structure or
on a tract of land.

*Id.*, Article 9, U.

Limiting our discussion to the LUO's regulation of structures,
we note that the disjunctive definition is in accord with the city
council's intent and purpose to control both the design or arrange-
ment of a structure and its actual use. Thus, even if the design of a
structure conforms to the LUO's requirements, the use to which it
is put may be in violation. Alternatively, the design or arrange-
ment of a structure may, *per se*, violate the ordinance. ***Rowatti v.
Gonchar***, 101 N.J. 46, 500 A.2d 381 (1985).

In the context of the intent and purpose of the LUO, the term
"independent living unit for a family" refers to a building or part of
a building which is designed or arranged in such a manner that a
family can live therein independently of other lodging or dwelling
units.[8]  Where such a room or group of rooms contains a kitchen,
then it is a dwelling unit.[9]  The distinction between a lodging unit
and a dwelling unit is exemplified in the LUO's definition of a
hotel as "[a] building or group of buildings containing lodging and/
or dwelling units in which 50 percent or more of the units are

---

[8] A dwelling unit is defined as:

A room or rooms connected together, constituting an independent house-
keeping unit for a family and containing a single kitchen.

*Id.*, Article 9, D.

[9] The LUO defines a kitchen as:

A kitchen facility for a housekeeping unit exists when there are, on the prem-
ises of the housekeeping unit, an item from all three of the following catego-
ries:

A.  Fixtures, appliances or devices for heating or cooking food.
B.  Fixtures, appliances or devices for washing utensils used for dining and
food preparation and/or for washing and preparing food.
C.  Fixtures, appliances or devices for refrigeration of food.

*Id.*, Article 9, K.

lodging units." LUO, Article 9, H. In short, a lodging unit is like a hotel room with its own living area, including a bathroom, but no kitchen as defined in the LUO,[10] and independent ingress and egress.

The question, then, is whether the State proved that the two back units were lodging units. We hold that it did.

The evidence shows that each of the three groups of rooms in Defendant's building is designed and arranged so that each can be occupied by a family independently of any of the other units. Each unit has its own external doorway for ingress and egress, and there are no internal connections among them. Each unit has a bedroom, a living room, and a bathroom. The front unit is a dwelling unit by definition. Since neither of the back units has a complete kitchen, each is a lodging unit. The lower court's findings of fact that there were "no internal openings or doorways between the front, back and upper units;" that the upper back unit had an external stairway as its only access; and that the back units each had a sink and refrigerator, are not clearly erroneous and support the court's conclusion that Defendant was in violation of the LUO on the basis that he maintained two lodging units on the property.[11]

---

[10] At trial, Defendant cross–examined the State's witness at length over the nature of a sink and whether the upstairs back unit contained a sink or a wash basin normally found in a bathroom. Defendant was attempting to show that because the facility was not a sink for washing dishes or preparing food, the upstairs back unit was not a lodging unit. Defendant misses the point. The absence of a kitchen only distinguishes a lodging unit from a dwelling unit. Even if a unit has none of the three kitchen facilities listed in the LUO it can be a lodging unit.

[11] Defendant argues that, regardless of the design of the three units, the State was required to prove, but did not, that their occupants were not a family as defined by the LUO. In view of our construction of the LUO, the argument is without merit.

2.

Defendant also contends that the use of the property was legal under the Comprehensive Zoning Code (CZC), Chapter 21, Revised Ordinances of Honolulu 1978 (1983 ed.), the forerunner of the LUO. Consequently, he asserts it is a nonconforming use under the LUO. We disagree.

The LUO defines nonconforming use as:

[a]ny use of a structure or a zoning lot which was previously lawful but which does not conform to the applicable use regulations of the district in which it is located, either on the effective date of this Chapter or as a result of any subsequent amendment[,]

*id.*, Article 9, N, and provides that, "[n]onconforming lots, structures, uses, dwelling units and parking may be continued," subject to conditions not applicable in this case. *Id.*, § 21A–3.120.

The evidence showed that the upstairs back unit was constructed in 1982 as a recreation room. In order to obtain the building permit, Defendant submitted an affidavit stating that "the entire structure shall be maintained as a single family dwelling containing only one kitchen." On November 30, 1983, the State's witness, a city building inspector, inspected the structure in response to a telephone complaint. He testified he found a violation because the upstairs back unit was being used as living quarters; however, he did not issue a citation.

Defendant introduced a copy of the inspector's November 30, 1983 zoning report in which the inspector described the premises and noted that the front unit was occupied by a Mr. and Mrs. Reginald Leipsic and their one child, and the upstairs back unit was occupied by a Mr. and Mrs. John Beach. The back downstairs unit was vacant. In his zoning report the inspector asked the question: "Is there a violation of the affidavit if [the upstairs back unit] is used as a living area?" The zoning report was apparently referred

to a "Research Inspector" who noted on the report, "As long as only 1 kitchen with a family & a maximum of 3 boarders are maintained there is no violation." Defendant maintains that the notation is proof of nonconforming use. We disagree.

The notation is merely a paraphrasing of the CZC's provision that a maximum of three boarders may be maintained as an accessory use to a family in a residential district. CZC § 21–5.2(b)(3).[12] The notation is not a finding of a permissible accessory use. Consequently, the evidence does not establish that Defendant's use of the property was a nonconforming one.

Affirmed.

*Edgar Lum*, defendant–appellant, pro se, on the briefs.

*James M. Anderson*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for State.

---

[12] Section 21–5.2(b)(3) of the Comprehensive Zoning Code provides:

Roomers may be accessory to a family composed of persons related by blood, adoption, or marriage, provided that such roomers may not exceed a total of three persons.