MAURICE SILVER, M.D., Plaintiff-Appellee, Cross-Appellant, Plaintiff-Appellant, *v.* THE QUEEN'S HOSPITAL, aka QUEEN'S MEDICAL CENTER, a Hawaii non-profit corporation, Defendant-Appellant, Cross-Appellee, Defendant-Appellee, and SAINT FRANCIS HOSPITAL, a Hawaii non-profit corporation, et al., Defendants-Appellees, and KUAKINI HOSPITAL, a Hawaii non-profit corporation, et al., Defendants

NO. 6260

CIVIL NO. 24188

JUNE 17, 1981

RICHARDSON, C.J., MENOR, LUM, NAKAMURA AND CIRCUIT JUDGE FONG, IN PLACE OF OGATA, J., DISQUALIFIED

OPINION OF THE COURT BY MENOR, J.

The plaintiff, Maurice R. Silver, M.D., has appealed from the trial court's orders granting summary judgment to defendants Queen's Hospital and St. Francis Hospital and to individual defendants Ralph B. Cloward, M.D., John J. Lowrey, M.D., and Thomas S. Bennett, M.D., and from the orders denying his own motions for summary judgment as to these defendants. He also appeals from the circuit court's refusal to mandate the Queen's Hospital to grant him staff privileges. Defendant Queen's Hospital has appealed from that part of the circuit court's judgment, entered on April 29, 1976, requiring it to grant the plaintiff a rehearing on his application for staff privileges at the hospital. The background on this issue will be discussed in Part II of this opinion. Forty-seven other named defendants, including Kuakini Hospital, were dismissed at various stages of the case and are not parties to this appeal.

I.

Between the years 1962 and 1967, the plaintiff applied for neurosurgery privileges, or requested reconsideration of prior applica-

tions, allegedly six times at Queen's Hospital, five times at St. Francis Hospital and three times at Kuakini Hospital. Each application was denied. Following the 1967 denials of his applications by these hospitals, the plaintiff filed the present action on February 2, 1968. Count I of the complaint alleged that the defendants had engaged in a conspiracy, in violation of the state's antitrust statutes, to prohibit him from practicing his profession by denying him staff privileges at these hospitals without good cause and without a hearing. Defendants Cloward, Lowrey, and Bennett were members of the medical credentials committees of these hospitals. Count II of the complaint alleged a common law conspiracy on the part of the defendants for the same purpose. In his complaint the plaintiff charged that the conspiracy to deny him staff privileges was motivated by the defendants' prejudice against his religion, and the desire of the named doctor-defendants to monopolize the neurological surgery business for themselves and to punish him for discovering the malpractice of other doctors and testifying in court against them. He further alleged that by reason of this conspiracy to deny him staff privileges, he lost numerous patients and substantial income when those of his patients who were in need of hospitalization had to transfer to other physicians, including the named neurosurgeons, who had staff privileges at the defendant hospitals. In addition to treble damages, punitive damages, costs and attorney's fees, the complaint sought injunctive relief to compel the defendant hospitals to admit plaintiff to staff privileges or show cause for their denial.

The same day that the plaintiff filed the present action, he also filed a separate suit in the circuit court against Castle Memorial Hospital, its administrator, staff, board of trustees, and against the same Doctors Cloward and Lowrey (hereinafter referred to as the "Castle Case"). His complaint was filed in response to Castle's refusal to renew his staff privileges at the hospital following a one-year probationary period. Essentially, his complaint charged the defendants with having engaged in common law and antitrust conspiracies to deprive him of staff privileges. It further alleged that he had been defamed. The plaintiff prayed for money damages and for injunctive relief to compel the hospital to permit him to use its facilities. The matter proceeded to trial in October, 1969, some five months after the plaintiff had filed a statement of readiness in the instant suit. In April of 1970, the trial court denied injunctive relief

and granted the defendants' motions for directed verdict, finding the allegations of defamation, common law conspiracy, and antitrust violation to be without merit. Plaintiff appealed that decision to this court.

While his appeal was pending, the plaintiff, on September 19, 1970, filed suit in the federal district court, naming the defendants in the Castle Case and all of the defendants in the instant suit as defendants. In his federal suit he charged conspiracy on the part of the defendants to deprive him of hospital staff privileges and characterized his action as one "involving a single ten-year state-wide conspiracy which continues to date and which violates the Sherman Act, the Clayton Act, and also the Civil Rights Act." The plaintiff did not ask the federal court to exercise pendent jurisdiction over the claims involving Hawaii's antitrust statute and the common law conspiracy alleged in the state court suits.

Upon motion of the defendants, the plaintiff's original complaint in federal court was dismissed without prejudice for noncompliance with the Federal Rules of Civil Procedure. His amended complaint was dismissed for the same reason. So was his second amended complaint. He was granted leave to file a third amended complaint upon the condition, *inter alia,* that he strictly comply with the provisions of Rule 8(a) of the Federal Rules of Civil Procedure. This third amended complaint, however, was also dismissed for noncompliance with the Rules.

This court, on May 24, 1972, issued its decision in the Castle Case, holding that the plaintiff-appellant's allegations of defamation, common law conspiracy, and antitrust violations were without merit and that as to those issues the judgment of the trial court was affirmed. *Silver v. Castle Memorial Hosp.,* 53 Haw. 475, 497 P.2d 564 (1972); *cert. denied* 409 U.S. 1048 (1972); *reh. denied* 409 U.S. 1131 (1973). On the basis of the *Castle* ruling, certain defendants in the federal suit who were defendants in the Castle Case, including Dr. Cloward and Dr. Lowrey, were granted summary judgment on the grounds of *res judicata* by the district court. The court pointed out that the complaint against these defendants in the federal case in essence presented the same grievance, that is, that the plaintiff had been wrongfully deprived of staff privileges at Castle Memorial Hospital.

Thereafter, the plaintiff was allowed to file a fourth amended

complaint. It, too, however, was dismissed for failure to comply with the Rules, this time *without leave to amend.* Judgment for the defendants, including the defendants-appellees in the instant case, was accordingly entered on September 4, 1973. On the petition for rehearing, the Ninth Circuit Court of Appeals affirmed the trial court's rulings in a memorandum opinion filed on June 18, 1975. *Silver v. Queen's Hospital,* 518 F.2d 555 (9th Cir. 1975). The plaintiff's petition for certiorari to the United States Supreme Court was denied on March 22, 1976. *Silver v. Queen's Hospital,* 424 U.S. 968 (1976).

While the federal suit was on appeal, the trial in the instant case commenced on or about June 5, 1975. After the plaintiff had rested his case, Judge John Lanham, then presiding, granted motions for directed verdict as to all defendants except Queen's Hospital, St. Francis Hospital, Dr. John J. Lowrey, Dr. Ralph B. Cloward, and Dr. Thomas S. Bennett. A mistrial, however, was declared upon motion of the plaintiff shortly after the defendants had begun presenting their evidence. Subsequently, Judge Lanham entered an order finding the Queen's Hospital hearing on the plaintiff's application for staff privileges to have been defective and ordering a rehearing. See Part II of this opinion.

The case was then reassigned to Judge Harold Y. Shintaku for the purpose of conducting a new trial. Before trial, however, and following the United States' Supreme Court's denial of the plaintiff's petition for certiorari in the federal case, the defendants in the instant case renewed their earlier motions for summary judgment, arguing that *res judicata* and collateral estoppel now constituted a bar to the plaintiff's claim. The trial court agreed and on May 20, 1976, granted their motions. It found, after considering the records in the Castle Case and in the federal case, that the issues and facts being litigated in the instant action were the same as those which were litigated or could have been litigated by the plaintiff in those cases. It pointed out that these facts and issues had been decided adversely to the plaintiff in those suits. We agree with the trial court and affirm the summary judgments in favor of the defendants.

The doctrine of *res judicata* essentially provides that "[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the

issues which were actually litigated in the first action, but also of all grounds of claim or defense which might have been properly litigated in the first action but were not litigated or decided." *Estate Bernice P. Bishop*, 36 Haw. 403, 416 (1943). In the application of the doctrine, three basic questions must ordinarily be answered in the affirmative: (1) Was the issue decided in the prior action identical with the issue presented in the present action? (2) Was there a final judgment on the merits in the prior action? (3) Was the party against whom the doctrine is asserted a party or in privity with a party to the previous adjudication? *Morneau v. Stark Enterprises Ltd.*, 56 Haw. 420, 424, 539 P.2d 472, 475 (1975).

An aspect of *res judicata* which is often determinative is collateral estoppel "which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. . . . [It] also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue." *Ellis v. Crockett*, 51 Haw. 45, 55-6, 451 P.2d 814, 822 (1969). Thus, in a case where the issue of whether certain acts committed by an employee were tortious was raised by and resolved against the plaintiff in a previous action against the employer, this court held that the same plaintiff was collaterally estopped from relitigating that issue in a subsequent suit brought against the employee. *Gomes v. Tyau*, 57 Haw. 163, 552 P.2d 640 (1976). *See also Ellis v. Crockett, supra.*

On the record before us, we are satisfied that the doctrine of *res judicata* was properly applied by the trial court to bar the plaintiff's action in the instant suit. The judgments in the Castle Case and in the federal action had become final when the court granted the summary judgments in favor of the defendants. All of the defendants in the federal suit are parties in the instant case. Doctors Lowrey and Cloward were also parties in the Castle Case.[1]

---

[1] We find it unnecessary to decide whether the plaintiff's claims against Queen's Hospital, St. Francis Hospital, and Dr. Bennett might also have been precluded, under collateral estoppel principles, by the adjudication in the Castle case. We note, however, that the record with respect to Dr. Bennett is very strongly in favor of their application as to him.

The basic issue presented in this case is identical to the issue that was unsuccessfully litigated by the plaintiff in the Castle Case and in the federal suit..At the heart of the plaintiff's complaint in all three cases was the alleged wrongful refusal of the defendant hospitals to grant him staff privileges. The basic charge in all of these cases was that the defendants had engaged in a long-term conspiracy to deprive him of these privileges and that in the process they had also violated the state antitrust statutes (in the state suits) and the federal antitrust and civil rights acts (in the federal suit). The acts that were the subject of the state and federal claims were the same. The fact that the plaintiff sought relief under the civil rights act in his federal suit and alleged common law conspiracy and violation of Hawaii's antitrust laws in his state suits does not necessarily render his claims different causes of action for purposes of res judicata. *See Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.,* 295 F.2d 362 (5th Cir. 1961); *Williamson v. Columbia Gas & Electric Corp.,* 186 F.2d 464 (3rd Cir. 1950); *Straus v. American Publishers' Ass'n.,* 201 F. 306 (2nd Cir. 1912); *McCann v. Whitney,* 25 N.Y.S.2d 354 (Sup. Ct. 1941). These cases essentially hold that alternate theories or claims arising from a single injury should be raised in a single action or they will be barred by *res judicata.* The single injury from which plaintiff suffered was, by his own allegation in the federal complaint, a single 10-year conspiracy involving, among others, all of the defendants in the instant suit. This was the same conspiracy to which the state suits were directed.

Even if we were to assume, *arguendo,* that the plaintiff's allegations of state antitrust and common law conspiracies were intrinsically different from the civil rights act conspiracy charged in his federal complaint, the federal court, nevertheless, potentially had pendent jurisdiction over the state antitrust and common law claims of the plaintiff. A federal court having competency to entertain an action because it arises under federal law may also hear and determine any demands based on state law which spring from the same transaction or common nucleus of operative fact and which ordinarily would be expected to be tried in a single proceeding, *Mine Workers v. Gibbs,* 383 U.S. 715 (1966). *Edward J. Moriarty & Co. v. General Tire & Rubber Co.,* 289 F.Supp. 381 (S.D. Ohio 1967); 13 Wright, Miller & Cooper, Federal Practice and Procedure, § 3567.

The *res judicata* effect of a final federal court judgment applies to

all state claims which could have been raised under pendent jurisdiction. A plaintiff cannot maintain a second action in state court on the same transaction in which he attempts to advance a state law theory earlier omitted in a federal action. *Woods Exploration & Pro. Co. v. Aluminum Co. of Amer.* 438 F.2d 1286 (5th Cir. 1971); *cert. denied* 404 U.S. 1047 (1972); *McCann v. Whitney, supra; Brady v. Trans World Airlines, Inc.,* 274 A.2d 146 (Del. Super. Ct. 1971), *aff'd* 282 A.2d 620 (Del. 1971). Only where it is clear that a federal court would have refrained from exercising pendent jurisdiction over the state claims, such as where a jurisdictional bar operates, or where the federal court has exercised its discretion not to hear them, will those state claims not be barred in a subsequent state court suit. *Pope v. City of Atlanta,* 240 Ga. 177, 240 S.E.2d 241 (1977); *aff'd on reh.* 242 Ga. 331, 249 S.E.2d 16 (1978); *cert. denied* 440 U.S. 936 (1979).

The plaintiff argues, nevertheless, that there was no final judgment *on the merits* in the federal action and that the judgment in that case could not, therefore, supply the basis for the application of the doctrine of *res judicata.* He contends that the dismissal of his federal suit was for lack of jurisdiction. We disagree. For one thing, this argument could have no effect on the *res judicata* claims of Dr. Cloward and Dr. Lowrey who both were parties defendant in the Castle Case. The judgment against the plaintiff in that case is a bar to his claims against them in this case. More to the point, the record reveals that the involuntary dismissal in the federal suit under Rule 41(b) of the Federal Rules of Civil Procedure was ordered, not for lack of jurisdiction, as the plaintiff contends, but "solely as a matter of discipline" for repeated failure to comply with Federal Rule 8(a).

Rule 41(b) provides for an involuntary dismissal when a plaintiff fails to comply with the Federal Rules of Civil Procedure or an order of the court. Wright & Miller, Federal Practice and Procedure, Vol. 9 § 2369, p. 193. Under the last sentence of Rule 41(b), such a dismissal operates as an adjudication on the merits, or in the parlance of the courts, "with prejudice":

Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

It is true that the plaintiff's claim of a federal antitrust violation

(Count IV of the third amended complaint) was dismissed for failure to allege a restraint of interstate commerce. It is also true that the plaintiff's claims of civil rights violations under 42 U.S.C. § 2000e (Count II of the third amended complaint) and 42 U.S.C. §§ 1981 and 1983 (Count II of the fourth amended complaint) were dismissed, respectively, for failure to allege a right of constitutional magnitude and failure to sufficiently allege action taken by the defendants under color of state law. However, and this is the crucial point, the federal district court explicitly recognized that the last remaining claim (Count I of the fourth amended complaint) did state a cause of action under 42 U.S.C. § 1985(2) and (3). The court wrote:

This count, based on 42 U.S.C. § 1985(2) and (3) presents a new legal theory and in my opinion, if interpreted liberally, a claim for relief may be found in it.

But despite the fact that Count I of the fourth amended complaint might have stated a claim for relief under the Civil Rights Act, the federal court dismissed the claim for failure to comply with the Rules. The court said:

The pleading, however, does not comply with Rule 8(a)(2), and with the previous orders of this court.

. . . solely as a matter of discipline, count I of the fourth amended complaint should be dismissed *without leave to amend.* (Emphasis added)

In its Order and Judgment filed on September 4, 1973, the court decreed that "the defendants and all of them have judgment against the [plaintiff] and that the [plaintiff is] denied all relief." We think the intention to dismiss with prejudice was made emphatically clear. Such a dismissal "operates as an adjudication upon the merits." Rule 41(b) of the Federal Rules of Civil Procedure.

The plaintiff also argues that *res judicata* bars only a new action whereas the instant case was pending in state court when his federal suit was filed. This argument is also without merit. On this point, the Restatement of Judgments § 43 states:

A valid and final judgment rendered in one action is conclusive in another action between the parties although the other action was commenced before the rendition of the judgment or before the commencement of the action in which the judgment was rendered.

Thus, although the present suit was pending in state court at the

time the plaintiff filed his action in federal court, his claims were barred by *res judicata*, when the federal district court's judgment on the merits was finalized by the United States Supreme Court's denial of his petition for certiorari. *Chicago, R. I. & P. Ry. v. Schendel*, 270 U.S. 611 (1926); *Williamston v. Columbia Gas & Electric Corp., supra; Day v. Wiswall's Estate*, 93 Ariz. 400, 381 P.2d 217 (1963); Restatement of Judgments § 43, comment a.

## II.

Defendant Queen's Hospital has appealed from that portion of the judgment entered in the circuit court on April 29, 1976, requiring the hospital to grant the plaintiff, Dr. Silver, a rehearing on his application for staff privileges. In its Decision and Order the court concluded "that there was sufficient evidence from which the Board could conclude, if it so found, that there were good reasons not to allow Dr. Silver staff privileges at Queen's Hospital." Accordingly, it denied the plaintiff's prayer for a mandatory injunction which would have required Queen's Hospital to grant him staff privileges. The plaintiff has appealed this refusal. The court, nevertheless, held that a rehearing was mandated because "there were certain matters which transpired at these hearings which the court finds violated Plaintiff's rights to procedural due process of law."

In *Silver v. Castle Memorial Hosp., supra,* this court laid down the general outlines governing hearings on applications for staff privileges at Hawaii's hospitals. The hearing itself need not be as formal as a judicial or quasi-judicial proceeding. It must, however, comport with that which would be necessary for the deciding board to reach a fair and just resolution of the issues. Timely and adequate notice must be given to the applicant, or to the physician whose staff privileges are sought to be revoked, and such notice must contain specific information regarding the grounds or charges upon which the hospital is relying to either deny or to revoke these privileges. The physician must be provided every reasonable means and opportunity to show that the grounds specified for the denial of the application are either inadequate or baseless, or to refute the charges upon which revocation or denial of renewal is based. The decision of the board must be in writing and any denial or revocation may not stem from unreasonable, arbitrary, capricious, or dis-

criminatory considerations. Its findings of fact must be supported by substantial evidence. Such evidence has been defined by this court to mean that quantum and quality of evidence which would warrant a reasonable man in reaching a conclusion. *Shinn v. Yee, Ltd.*, 57 Haw. 215, 553 P.2d 733 (1976).

In the present case, the trial court found a violation of due process in the failure of the required notice to specify professional incompetency as a ground for the denial of staff privileges. The notice given to the plaintiff did fail to specify this particular ground, but on the facts of this case we disagree that due process was, as a result, violated.

The hearing in this case commenced on April 26, 1973 and was held in two-hour segments on Tuesdays and Thursdays for a total of fifteen sessions, concluding on July 5, 1973. At the eleventh hearing on June 7, 1973, the plaintiff was put on notice that his professional competency would be placed squarely in issue. The plaintiff thereafter had ample opportunity to consider this particular ground and to prepare to refute it. He might also have requested a continuance of the hearing for that purpose but he chose not to do so. As a matter of fact, he did present witnesses in his behalf on that particular issue. The record clearly shows that he was neither misled nor prejudiced by the inadequancy of the original notice. We find no due process violation here where the plaintiff is shown to have understood the issue and was afforded full opportunity to litigate it. *Cf. Golden Grain Macaroni Company v. F. T. C.*, 472 F.2d 882 (9th Cir. 1972); *cert. denied* 412 U.S. 918 (1973). With respect to the other procedural defects referred to by the trial court, we conclude from a review of the record that they were neither prejudicial nor determinative of the issues in this case.

We further find, as the trial court found, that there was sufficient evidence upon which Queen's Hospital could have based its denial of staff privileges to the plaintiff.

One of the grounds specified for the denial concerned the plaintiff's past personality conflicts and propensity for disruptive conduct. The notice to the plaintiff advised him that "[s]uch conflicts have resulted in abrasive and disruptive conduct on your part which does not lend support to your ability to contribute to an environment beneficial to patient care within an institution where team effort is essential."

In *Silver v. Castle Memorial Hosp., supra,* this court observed that personality as bearing upon team effort may properly be considered by a hospital board. However, in considering factors of personality, temperamental suitability, and propensity to disrupt staff harmony, particularly with respect to nursing personnel, the board should make allowances for the stresses that a competent and dedicated neurosurgeon generally undergoes in the performance of his delicate duties. *Sussman v. Overlook Hospital Assn,* 92 N.J.Super. 163, 222 A.2d 530 (1966). Moreover, "[a] denial of a physician's application upon the basis that his appointment will cause disharmony among the medical staff must be clearly and persuasively supported by the record. The record should also clearly and persuasively indicate that such prospective disharmony probably will have an adverse effect on patient care and not merely annoy or displease certain physicians and administrators." *Id.,* 92 N.J. at 182, 222 A.2d at 540. This is consistent with the proposition that denial of staff privileges will not be upheld for other than meritorious reasons. *Silver v. Castle Memorial Hosp., supra.*

The record does not conclusively show that the plaintiff's personality would have had a disruptive effect on team effort, but there was some evidence that this might have been a probable result. More importantly, the denial of staff privileges was not based entirely, or even predominantly, upon the plaintiff's personality. Questions were raised regarding his professional ethics and character. For example, the board found:

Doctor Silver treated and billed Kathleen Mellen at St. Francis Hospital when he did not have privileges at St. Francis. He treated Atherton Richards at Queen's without privileges. He treated and billed Kathleen Mellen at the Convalescent Center without the knowledge of her attending and admitting physician. He also billed Kathleen Mellen for home visits while she was a patient at Queen's.

Doctor Silver exhibited unexplained professional misconduct by seeing a patient without notifying the patient's attending physician, and he submitted bills for professional services rendered to the patient at a hospital where he did not have staff privileges. The Board does not condone such behavior. This misconduct by Doctor Silver suggests that since he did not hesitate to violate the rules and regulations of a hospital where he

was not on the staff, he would be apt to be similarly irresponsible if he were on the staff.

Doctor Silver made many irresponsible and unsubstantiated accusations during the hearings against this hospital, and doctors and others associated with the hospital which were completely unsupported. Some of those were:

He charged that Doctor John Lowrey and Doctor Morton Berk suborned perjury.

He charged that the hospital condones medical malpractice.

Doctor Silver also charged that insurance companies tell the Board of Directors at this hospital which doctors should or should not have staff privileges. That is a false and reckless charge. The decisions of the Board of this hospital are neither controlled nor influenced by insurance companies.

There were other findings by the board regarding the plaintiff's character and integrity, as well as his professional competence. With respect to the care and treatment of certain of his patients, the board summarized its findings as follows:

The evidence presented proves 1) that Doctor Silver failed to record complications in the hospital charts; 2) discrepancies between his notes and the nurses' notes; 3) discrepancies between the hospital records, Doctor Silver's office notes, and his later testimony in Court; 4) that either he did not keep his knowledge of anatomy and vascular surgery up-to-date or that he was intellectually dishonest in an attempt to deceive lay people; 5) that he violated principles of professional courtesy and hospital administration.

In light of the record, we do not find the denial of staff privileges to have stemmed from unreasonable, arbitrary, capricious, or discriminatory considerations, and accordingly reverse that portion of the trial court's judgment requiring a rehearing and affirm its refusal to grant the plaintiff's request for an injunction.

Affirmed in part and reversed in part.

*Joseph A. Ryan* for plaintiff-appellee cross-appellant plaintiff-appellant.

*Dennis E. W. O'Connor* for defendant Queen's Medical Center.

*William L. Fleming* for defendant St. Francis Hospital.

*Edmund Burke* for defendant Dr. Lowrey.

*William C. McCorriston* for defendants Drs. Cloward and Bennett.