ROBERT W. HALL, an individual, Plaintiff-Appellant, *v.* STATE
OF HAWAII, et al., Defendants-Appellees

NO. 11992

(CIVIL NO. 86-1646)

MAY 26, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Plaintiff-Appellant Robert W. Hall (Hall) appeals from the order dismissing his amended complaint with prejudice. We affirm.

The instant action (Hall II) was filed on April 30, 1986, after Hall had been denied admission to Defendant William S. Richardson School of Law (School) for the 1984 and 1985 admission years, and while his application for the 1986 admission year was pending.[1] The amended complaint charges that in denying Hall's enrollment Defendants[2] have violated the United States and

---

[1] The record shows that Hall's 1986 application was subsequently denied.

[2] The amended complaint in Hall II named as defendants the State of Hawaii, the University of Hawaii, its president and members of its Board of Regents, the William S. Richardson School of Law, its dean, registrar, and members of its Admissions Committee, James H. Dannenberg, and unknown Doe defendants.

Hawaii State Constitutions and "federal and state statutory and common law," and have unconstitutionally and unlawfully deprived him of his right to engage in the practice of law or to represent himself and members of his family in legal proceedings.[3] The individual defendants are named in their official capacities and as individuals. In essence, the amended complaint alleges that Defendants are discriminating against Hall on racial grounds, and are illegally manipulating the School's admission procedures to favor a group of applicants of which he is not a member.[4] Additionally, Hall II alleges that Defendant James H. Dannenberg (Dannenberg) libeled and defamed Hall by publishing the fact that Hall achieved a score of 25 on the Law School Admission Test, which was 2 points lower than the minimum required for admission to the School.

Hall II's prayer for relief requests the court to (1) declare Defendants' admission policies and procedures unconstitutional and illegal, (2) permanently enjoin Defendants from using those illegal policies and procedures to deny his enrollment in the School, (3) require Defendants to reselect "legally qualified" admittees for the 1986 admission year by lot[5] or to enroll Hall in the School for the 1986 admission year, (4) permanently enjoin Defendants from denying Hall the right to represent himself or a member of his family before any federal or state court in Hawaii, (5) award him general and punitive damages, and (6) require Defendants to reimburse

---

[3] Hall alleges that in First Circuit Court No. 85-0151 (*First Federal Savings and Loan Ass'n v. Hall*) his attempt to represent himself and his wife and children as beneficiaries of a trust he had established was thwarted when the pleadings filed by him on their behalf in that case were stricken on the ground that he was engaging in the unauthorized practice of law. Hall's appeals in that case (Appeal Nos. 11502 and 11906) were assigned to this court, but were dismissed by stipulation of the parties.

[4] The thrust of Hall's allegations is that he is being discriminated against because he is caucasian, that the School relies too heavily on the Law School Aptitude Test, the results of which are invalid due to "wholesale cheating," and that the School's admission policies and procedures, including its "preadmission program," together with the statute regarding the unauthorized practice of law, Hawaii Revised Statutes (HRS) § 605-14, favor graduates of "local" high schools and the University of Hawaii.

[5] The amended complaint also requests that the School select admittees by lot for the 1984 and 1985 admission years; however, they had already been selected and admitted to the School when the suit was filed.

him for appearing as his own attorney.[6]

Hall had previously filed a suit (Civil No. 84-1072, hereinafter Hall I) in the United States District Court for the District of Hawaii (District Court) in which the amended complaint alleged that the defendants named therein[7] had unconstitutionally and unlawfully denied his application for enrollment in the School for the 1984 admission year.[8] The Hall I complaint requested the same relief as in Hall II, except that the District Court was also requested in Hall I to declare that Hawaii Revised Statutes (HRS) § 605-14 prohibiting the unauthorized practice of law, and Rule 15(b), Rules of the Supreme Court,[9] which requires that every applicant for admission to the bar be a graduate of an "accredited" law school, unconstitutionally deprive him of the right to practice law, and to enjoin the Defendants from preventing him from taking the bar examination and to practice law if he should pass the examination.[10] Defendants' motion for summary judgment in the District Court was granted and the Hall I complaint was dismissed.

---

[6] The prayer for relief also requests a finding that "defendants Supreme Court of the State of Hawaii" have denied him equal protection of the laws under the first, ninth, and fourteenth amendments to the United States Constitution, and are in violation of various federal and state statutes relating to trusts, monopolies and restraints of trade through their "conspiracy, custom, usage and practice . . . with regard to the 'unauthorized practice of law.'" However, neither the members of the supreme court nor the court *per se* are named as defendants, and no service was made on them.

[7] With some exceptions the defendants in both Hall I and Hall II are the same. We discuss the variance between the named defendants in the two suits at part IV of this opinion, *infra.*

[8] Both amended complaints are extremely prolix and cite either as bases for jurisdiction or as grounds for relief article I, section 8, and the first, fifth, and fourteenth amendments to the United States Constitution; the "Civil Rights Acts of 1866, 1870, and 1871"; "Title IX of the Education Amendments of 1972"; "Title I of the Civil Rights Act of 1968"; "Title VI of the Civil Rights Act of 1964"; 42 U.S.C. §§ 1983 and 1985; Hawaii State Constitution, article I, §§ 4 and 6, article II, § 20, article III, § 1, article V, § 5, article IX, §§ 1, 4 and 5; HRS chapter 378 and §§ 480-4(a) and 480-9, and "state and federal common law, and contract law." Additionally, the amended complaint in Hall I cites Title VII of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981 and 1982; 28 U.S.C. §§ 1337, 1343 and 2201; and the Sherman Anti-Trust Act. Cited in Hall II, but not Hall I are violations of 20 U.S.C. § 1232(g), 42 U.S.C. § 1986, HRS chapters 91, 92, 304, 632, 661 and 662.

[9] Rule 15(b) cited by Hall is now Rule l(b), Rules of the Supreme Court (1984).

[10] *See* footnote 6, *supra.*

The District Court held that (1) the School's admission standards and procedures do not violate either the United States or Hawaii State Constitutions; (2) the School's preadmission program is based upon "economic disadvantage," and no racial or ethnic quotas have been established; (3) among the applicants for the admission years 1984-85 "at least 202 applicants were ranked higher than plaintiff in competition for 80 places[,]" and Hall lacked standing to challenge any alleged discrimination because he had no reasonable chance of selection; and (4) Hall's claim based upon the consideration given by Defendants to the Law School Admission Test is without merit. The District Court also held that the claims against the state's supreme court justices and those based upon Title VII of the U.S. Code were frivolous and without merit.

Prior to Hall I's dismissal, Hall withdrew as barred by the eleventh amendment of the United States Constitution all of his state law claims against the State and those defendants "determined by [the District Court] to be State officials[.]"[11] The District Court dismissed Hall I's state law claims on the grounds that all the defendants "acted as officials or employees of the State of Hawaii[,]" and the claims against them were barred by the eleventh amendment. On June 10, 1986, the Ninth Circuit Court of Appeals (Circuit Court) affirmed the judgment. *Hall v. Hawaii*, 791 F.2d 759 (9th Cir. 1986).

After the Circuit Court decision, Defendants filed in Hall II a "Motion To Dismiss Or In The Alternative For Summary Judgment" (Motion To Dismiss), which was granted on January 14, 1987,[12] and Hall entered this appeal.[13]

Except with regard to the complaint against Dannenberg, which will be discussed in part V below, the dispositive issue on appeal is

---

[11] The eleventh amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

[12] The order also denied a number of motions that had previously been filed by Hall.

[13] Hall filed a notice of appeal on February 10, 1987, and an amended notice on March 31, 1987. The amended notice merely set out the full title of the January 14, 1987 order so as to include on appeal the denial of Hall's prior motions.

whether the final judgment in Hall I bars the Hall II claims under the doctrine of *res judicata*. Before discussing that issue, however, we address the question raised in Defendants' answering brief whether this court has appellate jurisdiction.

I.

On November 17, 1986, the day before the hearing on the Motion To Dismiss, Hall filed a motion to continue the hearing, and at the November 18, 1986 hearing asserted that he needed more time to conduct discovery in order to present evidence in opposition to the Motion To Dismiss. However, Hall's motion was not accompanied by an affidavit as required by Rule 56(f), Hawaii Rules of Civil Procedure (HRCP) (1980). The lower court stated that it would allow Hall time to file such an affidavit, and took the motion to continue and the Motion to Dismiss under advisement.

On December 31, 1986, Hall filed another "Motion To Continue Re: Rule 56(f)" (Motion To Continue), this one accompanied by an affidavit.[14] On January 14, 1987, the lower court entered an order dismissing all of Hall's claims with prejudice and denied all of Hall's pending motions.

Defendants contend that the Motion To Continue was really a Rule 59(e), HRCP (1980) motion to alter or amend the judgment and, since the Motion To Continue was never decided, Hall's notice of appeal has no effect under the provisions of Rule 4(a) (4), Hawaii Rules of Appellate Procedure (1984).[15] We find no merit in Defendants' argument.

Hall's Motion to Continue stated that it was brought pursuant to Rule 56(f), HRCP,[16] and "the bench decision of the court at hear-

---

[14] It appears that the Motion To Continue was prompted by the fact that after the lower court's oral ruling on the motion on December 8, 1986, Defendants prepared the order dismissing the complaint and presented it to Hall for approval as to form; however, Hall refused to approve the form of the order. Shortly thereafter, Hall filed the Motion To Continue.

[15] On November 2, 1987, Defendants filed a motion to dismiss the appeal based upon essentially the same grounds and the fact that on July 20, 1987, Hall had filed in the circuit court a withdrawal of his December 31, 1986 Rule 56(f) motion to continue. Defendants argued that Hall's withdrawal of the motion was his admission that the court had not ruled on it. The motion to dismiss the appeal was denied.

[16] The motion also cited other rules not pertinent here.

ing on November 18, 1986[.]" But the transcript of the November 18, 1986 hearing shows that the court made no decision on any of the motions before it. The Motion To Continue's reference to "the bench decision" appears to be to the statement by the lower court that it would allow Hall time to file a Rule 56(f) affidavit, and the Motion To Continue was merely Hall's attempt to comply with Rule 56(f)'s requirement. The Motion To Continue cannot, in our view, be construed as a motion for reconsideration under Rule 59. Moreover, in the January 14, 1987 order the lower court held that, "[a]ll other motions filed by Plaintiff in this action, whether or not properly noticed for hearing, are denied." Consequently, the Motion To Continue was disposed of along with the other motions previously filed by Hall.

We hold that we have appellate jurisdiction.

## II.

The lower court did not specify whether it was dismissing this action under Rule 12, HRCP, or granting summary judgment.[17] However, since in deciding the Motion To Dismiss, which was entitled alternatively as a motion for summary judgment, matters outside the pleading were considered by the lower court, the court really granted summary judgment under Rule 56, HRCP, and not a dismissal under Rule 12(b) (6), HRCP. *See Towse v. State,* 64 Haw. 624, 647 P.2d 696 (1982).

## III.

Defendants claim that "all or nearly all of the claims here were or could have been litigated in Hall I, and are barred by claim preclusion, or depend on facts decided adversely to plaintiff in Hall I, and are hence barred by collateral estoppel." Hall argues that since his state law claims were dismissed by the District Court on jurisdictional grounds, they were not litigated and he is not precluded from pressing them in this case. We hold that Hall II is precluded by Hall I under the doctrine of *res judicata.*

---

[17] The Motion To Dismiss cited Rules 7(b) (1), 12(b) (1), (2), and (6), 54(b) and 56(b) and (d), HRCP.

The principles governing the instant case are stated in *Silver v. Queen's Hospital*, 63 Haw. 430, 629 P.2d 1116 (1983), in which the supreme court affirmed a summary judgment against the plaintiff on the grounds that under the doctrine of *res judicata* a dismissal of the plaintiff's prior federal suit barred the state action.

> The doctrine of *res judicata* essentially provides that "[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim or defense[18] which might have been properly litigated in the first action but were not litigated or decided." *Estate Bernice P. Bishop*, 36 Haw. 403, 416 (1943). In the application of the doctrine, three basic questions must ordinarily be answered in the affirmative: (1) Was the issue decided in the prior action identical with the issue presented in the present action? (2) Was there a final judgment on the merits in the prior action? (3) Was the party against whom the doctrine is asserted a party or in privity with a party to the previous adjudication? *Morneau v. Stark Enterprises Ltd.*, 56 Haw. 420, 424, 539 P.2d 472, 475 (1975).
>
> An aspect of *res judicata* which is often determinative is collateral estoppel "which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. . . . [It] also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue. *Ellis v. Crockett*, 51 Haw. 45, 55-6, 451 P.2d 814, 822 (1969)."

*Id.* 63 Haw. at 435-436, 629 P.2d at 1121 (footnote added).

The *res judicata* effect of a final federal court judgment applies to all state claims which could have been raised under

---

[18] In *Estate Bernice P. Bishop*, 36 Haw. 403 (1943), the supreme court used the language "claim and defense." However, in *Silver v. Queen's Hospital*, 63 Haw. 430, 629 P.2d 1116 (1983), the court substituted the "and" with "or." The use of the disjunctive in *Silver* does not, in our view, alter the principle.

pendent jurisdiction. A plaintiff cannot maintain a second action in state court on the same transaction in which he attempts to advance a state law theory earlier omitted in a federal action. *Woods Exploration & Pro. Co. v. Aluminum Co. of Amer.* 438 F.2d 1286 (5th Cir. 1971); *cert. denied* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); *McCann v. Whitney,* [25 N.Y.S.2d 354 (Sup. Ct. 1941)]; *Brady v. Trans World Airlines, Inc.,* 274 A.2d 146 (Del. Super. Ct. 1971), *aff'd* 282 A.2d 620 (Del. 1971). Only where it is clear that a federal court would have refrained from exercising pendent jurisdiction over the state claims, such as where a jurisdictional bar operates, or where the federal court has exercised its discretion not to hear them, will those state claims not be barred in a subsequent state court suit. *Pope v. City of Atlanta,* 240 Ga. 177, 240 S.E.2d 241 (1977); *aff'd on reh.* 242 Ga. 331, 249 S.E.2d 16 (1978); *cert. denied* 440 U.S. 936, 99 S.Ct. 1281, 59 L.Ed.2d 494 (1979).

*Id.* 63 Haw. at 437-438, 629 P.2d at 1122-1123.

The supreme court found that the claims in *Silver* were the same in both the federal and the state case, the plaintiff having alleged in both cases that the defendants engaged in a conspiracy spanning ten years to unlawfully deprive him of his right to practice medicine. Additionally, the supreme court held that the fact that the state case included state statutory claims not included in the federal case did not relieve the plaintiff of the *res judicata* effect of the federal judgment. Both complaints were aimed at the same conspiracy and the state statutory claims were merely "alternate theories or claims arising from a single injury[,]" and should have been raised in a single action. *Silver,* 63 Haw. at 437, 629 P.2d at 1122. With *Silver's* holding in mind, we examine the claims and issues in this case.

A.

The fundamental claim is the same in both Hall I and Hall II. The gravamen of the amended complaints in both cases is that Defendants unlawfully and conspiratorially established or manipulated the School's admission procedures so as to unconstitutionally and unlawfully deny Hall enrollment in the School and a right to practice law. That basic claim was dismissed on its merits by the

District Court and the dismissal was affirmed by the Circuit Court. Consequently, all of Hall II's federally based claims are barred.

Hall argues, however, that his state law claims were withdrawn from Hall I and he is not precluded from pressing those claims in Hall II.[19] He contends that the doctrine of *res judicata* does not apply to them. We disagree.

### B.

The District Court held, *inter alia,* that "students from all racial, ethnic and age groups are considered for the [pre-admission] program, eligibility for which is based upon economic disadvantage, and no racial or ethnic quotas have been established; and" that Hall's "claims based upon consideration of Law School Admission Test and allegedly subjective factors other than those raising discrimination claims are without merit." Those issues are the crux of Hall's complaints in both cases.

In *Silver* the supreme court held that the basic issue in both the federal and the state case was identical, and the fact that the plaintiff had presented different grounds for asserting his state case from those of the federal case did not "render his claims different causes of action for purposes of *res judicata.*" *Id.* 63 Haw. at 437, 629 P.2d at 1122. Here, also, the basic issues in Hall I and Hall II are identical, and Hall II's state claims merely asserted alternate theories or grounds for redressing a single injury.

---

[19] Hall also argues that he was prejudiced by protective orders issued by the lower court which prevented his discovering evidence to support his claim, and that summary judgment should not have been granted until he had had an opportunity to complete discovery. We disagree.

In *Makanui v. Department of Education,* 6 Haw. App. 397, 721 P.2d 165 (1986), we held that where a protective order is issued in anticipation of and subject to a ruling on a Rule 12(b) (6), Hawaii Rules of Civil Procedure motion to dismiss, the protective order should be lifted before treating and deciding the 12(b) (6) motion as a Rule 56 motion for summary judgment. The instant case is distinguishable from *Makanui.* In *Makanui,* the protective order prevented discovery of factual matters relating to the plaintiff's claims. Here, the sole legal question is the *res judicata* effect of Hall I. The protective orders in this case related to the facts to support Hall's claims, not to the question of *res judicata* presented by the motion for summary judgment. Consequently, Hall's ability to defend against the Motion To Dismiss was not prejudiced by the protective orders.

Consequently, Hall's withdrawal of his state law claims from Hall I does not allow him to reassert them here. His basic claim, that the School's admission policies and procedures unconstitutionally and illegally discriminate against him was decided against him in Hall I on the merits and he is precluded from relying on state law grounds to prove those same claims. Even if Hall has a cause of action for violation of any right he might have under the state constitution or the statutes he has cited,[20] he would be collaterally estopped from proving that the result of the constitutional or statutory violation was to unlawfully discriminate against him. *Silver, supra.*

Consequently, summary judgment was properly granted.

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rules of Procedure 50(a). . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986).

*Celotex Corporation v. Catrett,* 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-2553, 91 L.Ed.2d 265, 273-274 (1986).

Additionally, although Hall II includes an action for the 1985 and 1986 admission years, which were not included in Hall I, the

---

[20] In *Makanui v. Department of Education,* 6 Haw. App. 397, 403 n.2, 721 P.2d 165, 170 n.2 (1986), we left open the question whether there exists a cause of action to recover damages for violation of rights accorded under the state constitution. In *Wilder v. Shimoda,* 7 Haw. App. ____ (No. 12297, May 5, 1988) (*cert. granted,* May 18, 1988), however, we held that an inmate of a penal institution has an implicit right to sue prison officials for damages caused by an alleged violation of the inmate's due process rights under article I, section 5 of the state constitution.

subject matter of both actions is the same. Both amended complaints present the same issue. Except for the academic years involved, Hall II presents no discernible change in the "material operative facts" from those complained of in Hall I. *Cf.* Restatement (Second) of Judgments § (24), comment (f) (1982).[21] The factual bases for Hall's claim are the same in both cases.

## IV.

Hall II includes certain defendants not named in Hall I,[22] but does not name as defendants the Hawaii Supreme Court and its individual justices,[23] who were named as defendants in Hall I. The Hall II defendants, with the exception of Dannenberg, were either named as defendants in or are unquestionably in privity with those in Hall I and the claims against them are barred by the doctrine of *res judicata. Silver, supra.*

## V.

Hall's defamation claim against Dannenberg is completely unmeritorious. It is undisputed that Dannenberg's statements were made in preparation for Hall I's defense. As the deputy attorney general assigned to defend the defendants in Hall I, Dannenberg was absolutely privileged to make the statements attributed to him. *McCarthy v. Yempuku,* 5 Haw. App. 45, 678 P.2d 11 (1984).

Affirmed.

---

[21] Restatement (Second) of Judgments § (24), comment (f) (1982) reads in pertinent part:

> *Change of circumstances.* Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first.

[22] Defendants named in Hall II but not in Hall I are Robin Companiano, who was named as a University of Hawaii regent in place of Tatsuki Shiramizu; Jeremy T. Harrison, dean of the School; James H. Dannenberg, deputy attorney general; and Ronald C. Brown, and John E. Pickron, chairman and member of the School's admission committee, respectively.

[23] *See* footnote 6, *supra*.

*Robert W. Hall,* plaintiff-appellant, *pro se,* on the briefs.

*Steven S. Michaels,* Deputy Attorney General, on the brief for defendants-appellees.