Raymond **PEDRINA**, Luz Pedrina, Jupiterrex Uraniumrhi and Rosita Uraniumrhi, Plaintiffs,

Leonard Wong and Cheryl Wong; Isidro Dilay; Margaret S. Dilay; Lorraine Dilay; Nicanor Amit; Alejandro Coloyan and Ofelia Coloyan; Raphael Kamai and Lynda Augustus; Alfredo Aurio, Sr. and Benita Aurio; Jennie Olinger; James Jones and Loretta Jones; Sebastian Igarta and Estrella Igarta; Wilfredo M. Bolo and Josefina V. Bolo; Cristita Bolo; Francisco Pedrina and Adoracion Pedrina; Frances C. Miguel; William Sullivan and Jocelyn Sullivan; Violeta Dumadag; John Batalona; Cipriano Manuel; Severo Duque; Milnor Lum; Peter Barcia and Julie Barcia, Plaintiffs–Appellants/Cross–Appellees,

v.

Han Kuk **CHUN**; Tetsuo Yasuda; Y.Y. Valley Corporation, Defendants–Appellees/Cross–Appellants,

and

Masanori Kobayashi; Yoshinori "Ken" Hayashida; City and County of Honolulu and Mayor Frank F. Fasi; Robert Carter; Eugene Lum and Norma Lum; Ernest Souza; Hiroshi Kobayashi, Defendants–Appellees.

Nos. 95–16477, 95–16782.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1996.

Decided Oct. 10, 1996.

Anthony P. Locricchio, Kailua, Hawaii; David Behling, Kailua, Hawaii, for plaintiffs-appellants/cross-appellees.

Paul Alston and Mei Nakamoto, Alston Hunt Floyd & Ing, Honolulu, Hawaii; Archie T. Ikehara, Honolulu, Hawaii; Ward F.N. Fujimoto, Fujiyama, Duffy & Fujiyama, Honolulu, Hawaii; Mervyn M. Kotake, Matsubara, Lee & Kotake, Honolulu, Hawaii; Lono J. Lee, Honolulu, Hawaii, for defendants-appellees/cross-appellants.

Before: FLETCHER, D.W. NELSON and CANBY, Circuit Judges.

D.W. NELSON, Circuit Judge:

### OVERVIEW

Plaintiffs Leonard Wong, et al., brought this action against Defendants Han Kuk Chun, Tetsuo Yasuda, Masanori Kobayashi, Yoshinori Hayashida, Y.Y. Valley Corporation ("YYVC"), Hiroshi Kobayashi, Eugene Lum, Norma Lum, and former Mayor Frank Fasi under the Racketeering Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961–68. Plaintiffs allege that the defendants violated § 1962(c), which prohibits any person from conducting an enterprise through a pattern of racketeering activity and § 1962(d), which prohibits any person from conspiring to violate any of the provisions of subsections (a), (b) or (c) of § 1962. The district court granted summary judgment for the defendants, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1986, the Royal Hawaiian Country Club, Inc. ("RHCC"), a subsidiary of YYVC, was granted a conditional use permit ("CUP") by the City and County of Honolulu allowing RHCC to develop a golf course on YYVC's property. The CUP required RHCC to provide agricultural tenants who were then living on the property the opportunity to relocate. YYVC subsequently devised a relocation plan for the tenants which

---

[1]. An exhaustive discussion of the events preceding this litigation may be found in the district court's opinion. *Pedrina v. Chun,* 906 F.Supp. 1377 (D.Hawai'i 1995).

was approved by the city, but which was rejected by all of the tenants who lived in the project site area. The tenants who rejected the plan were served with eviction notices and summary possession actions were brought against them.

In November 1988, before the current action was filed in federal court, a number of the tenants filed an action against defendants Han Kuk Chun and YYVC in the Circuit Court of the First Circuit for the state of Hawaii. The tenants argued that in obtaining the CUP and attempting to evict them, the defendants were guilty of defamation, slander, violation of contract, intentional infliction of mental and physical duress, and wrongful conversion. The tenants further maintained that they were third party beneficiaries of the CUP, and that the defendants attempted to relocate them in violation of the CUP's provisions. They contended that as a result of complying with the defendants' allegedly improper demands, they suffered severe economic and physical damages.

Subsequently, plaintiffs brought this action against Han Kuk Chun, Tetsuo Yasuda, Masanori Kobayashi, Yoshinori Hayashida, YYVC, Hiroshi Kobayashi, Eugene Lum, Norma Lum and former mayor Frank F. Fasi under RICO. 18 U.S.C. §§ 1961–1968. The plaintiffs alleged claims that the defendants' activities resulted in the loss of home/farm leases, farming and rental income, crops and improvements, and that their rights as adverse possessors were injured. The plaintiffs also asserted that the defendants engaged in predicate acts of bribery, robbery, state and federal extortion, or that they aided and abetted in the commission of those activities, or both. They further alleged that the defendants obtained approval of the CUP by bribing Mayor Fasi and other city officials.

Also among the plaintiffs' claims were allegations that the defendants engaged in acts of mail fraud. The mail fraud claims were premised on the notion that the defendants misrepresented the nature of campaign contributions sent to Mayor Fasi, and that they sent the plaintiffs a number of eviction letters which did not inform them of their rights under the CUP. The complaint also alleged that Mayor Fasi aided, abetted, and conspired to aid and abet the mail fraud scheme by accepting the payments from YYVC and by permitting the tenants to be evicted.

On June 22, 1989, the state court entered an order to show cause why the plaintiffs' state court action should not be dismissed for want of prosecution. Plaintiffs responded that they were considering incorporating the state action into the federal RICO action. The state court then withdrew its order of dismissal, but entered another order of proposed dismissal on November 10, 1989. Plaintiffs responded that for purposes of judicial economy, they were considering joining the state court and the federal actions. The state court then withdrew its notice of proposed dismissal. Approximately a year and a half after the plaintiffs filed their pre-trial statement in the state court action, the state court issued yet another order of dismissal. When the plaintiffs failed to object, the court issued a final order of dismissal on August 22, 1991.

In June 1990, while the current action was pending in federal court, YYVC brought 23 summary possession actions in the District Court for the First Circuit Court of the State of Hawaii against most of the plaintiffs in the current action. The actions were subsequently consolidated and the tenants filed six counterclaims in response. In their counterclaims, the tenants argued that YYVC had conditionally promised them renewable leases on the property, that YYVC had attempted to relocate them in a manner inconsistent with the CUP, that they had title to the property under the law of adverse possession, that YYVC had breached an implied covenant of quiet enjoyment, that YYVC concealed from them certain of their rights under the CUP, and that YYVC was liable to them for violations of the state RICO statute. The court dismissed all of these counterclaims. Default judgments were entered against a number of plaintiffs who failed to appear for scheduled depositions, and YYVC prevailed against the remaining tenants at trial. The appeals of six of these tenants are still pending.

The district court dismissed the claims against the city on the grounds that a municipality could not be held liable under RICO. Moreover, in a comprehensive and well-reasoned discussion, the court also held that because the plaintiffs' state court action, and a number of their counterclaims in the summary possession action, were dismissed with prejudice, the current action was barred by res judicata. Additionally, the court held that Mayor Fasi could not be held liable under RICO as he had never participated in the operation or management of the alleged enterprise. The plaintiffs now appeal, and we affirm.

## STANDARD OF REVIEW

■ We review a grant of summary judgment de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The appellate court viewing the evidence must determine, in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. 58 F.3d at 441.

## DISCUSSION

### I. Municipal Liability under RICO

■ We summarily reject the tenants' RICO claims against the city. In *Lancaster Community Hosp. v. Antelope Valley Hosp.,* 940 F.2d 397, 404 (9th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992), we held that "government entities are incapable of forming [the] malicious intent" necessary to support a RICO action. Accordingly, we affirm the district court's dismissal of the city from this action.

### II. Mayor Fasi's RICO liability

■ The issue of Mayor Fasi's RICO liability, however, may not be disposed of so easily. 18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993), a RICO action against an accountant, the Supreme Court interpreted this provision as requiring some degree of participation "in the operation or management of the enterprise itself." In accordance with this standard, we held in *Baumer v. Pachl,* 8 F.3d 1341, 1344 (9th Cir.1993), that a lawyer who merely executed his professional duties and who had no managerial role in the alleged enterprise, should be exonerated of liability under RICO. The *Reves* court further noted that the requisite managerial role might be played by individuals who were " 'associated with' the enterprise" and "who exert control over it as, for example, by bribery." 507 U.S. at 184, 113 S.Ct. at 1173.

In the case before us, the district court reasoned that because there was no evidence that the mayor had attempted to direct the company's affairs, the bribery allegations levelled against him would not suffice to impute liability to him under the *Reves* "control by bribery" standard:

> This is not ... the classic situation where a defendant uses bribes to control an enterprise. Rather ... RHCC was allegedly using bribes to control the actions of outsiders. Plaintiffs have not submitted evidence suggesting that Fasi himself attempted to exert control over RHCC, or to direct the operations of the corporation.

906 F.Supp. at 1420. However, the issue of Mayor Fasi's control over the alleged enterprise in this case is muddied by the fact that, when asked about his participation in YYVC affairs, he invoked the Fifth Amendment. In *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976), the Supreme Court held that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Accordingly, one might properly glean from the mayor's invocation of the privilege that he played a greater role in the business of the alleged enterprise than he now argues.

Nonetheless, any negative inferences to be drawn against the mayor on this point are undermined by the fact that the essence of

the tenants' claims against him is that he was improperly influenced by the company. Indeed, among the plaintiffs' allegations are claims that the alleged bribes paid to the mayor "were intended to, agreed to and did influence Governmental Defendants to abstain from communicating to Plaintiffs their rights, or requiring Defendant/developers to inform Plaintiffs of Plaintiffs' rights under the CUP, and to abstain from punishing Defendant/developers for having concealed Plaintiffs' said rights." These allegations in themselves demonstrate that the wrongful conduct of which the mayor is accused relates not to his management of the alleged RICO enterprise, but rather to his having been controlled by it. Accordingly, we affirm the district court's finding that the plaintiffs' allegations against him fail to establish a RICO violation.

### III. The RICO Liability of the Corporate Defendants

The district court held that because of the earlier state court actions involving the tenants and YYVC, the federal action was barred by claim preclusion. We agree with that finding.

In determining whether a prior state court action bars a subsequent federal action, the federal court must look to the *res judicata* principles of the state court in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 80, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984). Hawaii courts require inquiry as to whether 1) the claim asserted in the action in question was or could have been asserted in the prior action, 2) the parties in the present action are identical to, or in privity with, the parties in the prior action, and 3) a final judgment on the merits was rendered in the prior action. *Santos v. State of Hawaii,* 64 Haw. 648, 646 P.2d 962, 966 (1982).

#### A. Same Claim

In order to determine whether a party is bringing the same claim as that asserted in the previous action, Hawaii law requires that we look to whether the claim springs from the same transaction or series of transactions that were at issue in the

earlier matter. *See Kauhane v. Acutron Co.,* 71 Haw. 458, 795 P.2d 276, 279 (1990).

### The Plaintiffs' State Court Action

The district court properly held that in this action, the plaintiffs "are all trying to vindicate the same rights and interests" that were at issue in the state court action they brought against the defendants. 906 F.Supp. at 1403. Indeed, in the state court action, as here, the plaintiffs were challenging the legality of YYVC's attempts to remove them from their property. The fact that the tenants raise claims in this action that were not alleged previously, such as bribery and mail fraud, does not change the analysis, as the claims that were omitted could have been raised in the earlier state court actions. *Silver v. Queen's Hosp.,* 63 Haw. 430, 629 P.2d 1116, 1122 (1981) ("[A]lternate theories or claims arising from a single injury should be raised in a single action or they will be barred by *res judicata*.").

### The Summary Possession Action

As discussed above, the plaintiffs' responses to YYVC's summary possession action included claims that: 1) the tenants were third party beneficiaries under the CUP, 2) the tenants had rights as adverse possessors, 3) YYVC breached a covenant of quiet enjoyment, 4) YYVC concealed from them their rights under the CUP, and 5) the defendants violated the state RICO statute. We think that those counterclaims were, as the district court held, "virtually identical to the property entitlements alleged in their complaint in this action." 906 F.Supp. at 1408. Indeed, at the heart of this matter are the plaintiffs' contentions that YYVC concealed from the plaintiffs their rights under the CUP, attempted to relocate them in violation of its provisions, and that municipal officials were complicitous in these acts. As was true of the plaintiffs' state court action, the plaintiffs' counterclaims in the summary possession action certainly could have been included in the allegations they attempt to raise here.

#### B. Privity

In order to show privity between a non-party and a party to former litigation,

the party who asserts that the matter is barred by claim preclusion must demonstrate that the nonparty's interests and rights were represented and protected in the prior action. We have held that privity exists between a non-party and a party if the latter is so closely bound with the former as to be its "virtual representative." *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir.1980). Privity will be found only where the interests of the non-party were adequately represented in the earlier action, *Hansberry v. Lee*, 311 U.S. 32, 44–45, 61 S.Ct. 115, 119–20, 85 L.Ed. 22 (1940), and the previous litigation afforded "proper protection to the rights of the person sought to be bound." *In re Herbert M. Dowsett Trust*, 7 Haw.App. 640, 791 P.2d 398, 402 (1990) (internal quotation marks and citation omitted), *cert. denied*, 71 Haw. 667, 833 P.2d 900 (1990).

█ With respect to both the plaintiffs' state court action and the summary possession action, we have little difficulty concluding that privity exists between the parties in those cases, and the litigants in this matter. Most of the plaintiffs in the instant action were parties to the earlier state court proceedings, and the plaintiffs have not argued that there was any lack of privity on the plaintiffs' side. Moreover, the interests of all the tenants were well represented by the parties to the earlier state proceedings. The commonality of the transaction is indicated by the fact that the claims in all three cases arose from the same transaction. The tenants are all similarly situated and their interests were given due consideration in the earlier proceedings.

█ On the defendants' side, we conclude that privity exists as a matter of law between the corporate defendants in this matter and those in the earlier actions. Clearly, YYVC and Han Kuck Chun are bound by the plaintiffs' state court action litigation because they were parties to it. YYVC was also the party against whom the counterclaims were raised in the summary possession action. In their case, there is an identity of parties. As to the corporate officers who were named in the instant action but were not defendants in the earlier litigation, we find that they were in privity with the defendants in the earlier cases, as they are being accused of participating in the same criminal wrongdoing with which the corporation was charged previously. The fact that certain of those defendants are being sued in their individual capacities does not weigh against a finding of privity with the corporation, as the allegations against them relate to actions taken in their official, rather than their individual, capacities.

The tenants correctly argue that, as was true of Mayor Fasi, we may draw negative inferences from the defendants' invocation of the Fifth Amendment when asked about their participation in the company. *See Baxter*, 425 U.S. at 318–19, 96 S.Ct. at 1557–58. However, given the fact that those individuals are all named officials or agents of the alleged enterprise, and the charges against them all relate to action taken as officers of the enterprise, any negative inferences to be drawn could not suffice to raise a genuine issue of material fact as to their privity with the corporation.

*C. Final Judgment*

█ Finally, in order for a judgment to have a preclusive effect on a later action, it is necessary that a final judgment on the merits have been rendered in the earlier proceeding. As to the five plaintiffs whose appeals in the summary possession action are still pending, we note that the judgment in the summary possession action can have no preclusive effect as to them.

█ The tenants' state court action, however, has a preclusive effect as to all the plaintiffs. Haw. R. Civ. P. 41(b) provides that an involuntary dismissal for want of prosecution shall operate as "an adjudication upon the merits."[2] Contrary to the plaintiffs' contention, a court may dismiss actions *sua sponte* for want of prosecution. *Compass Development Inc. v. Blevins*, 10 Haw. App. 388, 876 P.2d 1335, 1339 (1994).

The plaintiffs maintain that the involuntary dismissal of their state court action was improper because they received no notice of

---

**2.** Rule 12(q) of the Hawaii Rules of the Circuit Courts, which provides for dismissal without prejudice when a pretrial statement has not been filed, is not applicable, as the plaintiffs filed a pretrial statement prior to the dismissal of the action. 906 F.Supp. at 1405.

that dismissal. We may not, however, review the propriety of that state court decision; any error should have been appealed to the Hawaii Supreme Court. In *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 206 (1983), the Supreme Court held that while plaintiffs may challenge the constitutionality of state court rules in lower federal courts, they may not challenge "state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *See also Partington v. Gedan,* 961 F.2d 852, 864 (holding that under *Feldman,* lower courts may not review a specific state court decision interpreting a state court rule), cert. denied, *Partington v. Lum,* 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992). Thus, we must give that decision preclusive effect. *Robi v. Five Platters, Inc.,* 838 F.2d 318, 322 (9th Cir.1988) ("Under the Full Faith and Credit Act, federal courts must .give state judicial proceedings the same full faith and credit ... as they have by law or usage in the courts of [the] State ... from which they are taken [and must] apply the res judicata rules of a particular state to judgments issued by courts of that state") (internal quotation marks and citation omitted).

We find that all three prongs of the claim preclusion analysis have been satisfied. Accordingly, we affirm the district court's ruling that the current action is barred by *res judicata.*

## IV. Judicial Bias and the Defendants' Cross–Appeal

Because the plaintiffs failed to raise their claims of judicial bias below, we will not consider them here. *See E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1295 (9th Cir.1992). In addition, because we affirm the district court's grant of summary judgment in favor of the defendants, we decline to consider the merits of the defendants' cross appeal.

AFFIRMED.